## THE STATE v. DORA HUBBARD, Appellant.

**Division Two, November 23, 1909.**

1. **INSTRUCTION: Circumstantial Evidence.** It is only when a conviction is sought on circumstantial evidence alone, that it is necessary to give an instruction on the weight of circumstantial evidence.

2. **EVIDENCE: Other Conviction.** Where defendant has made herself a witness, it is competent for the State to introduce judgments of prior convictions of various offenses; and it is then permissible to impeach and cross-examine her.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman,* Judge.

AFFIRMED.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1) Appellant complains because she was cross-examined as to the number of times she had been convicted of various crimes prior to the date of this trial. When appellant became a witness, she was then subject to such cross-examination. This is permitted by our statutes. R. S. 1899, sec. 4680; State v. Blitz, 171 Mo. 530; Land & Lumber Co. v. Chrisman, 172 Mo. 617; State v. Heusack, 189 Mo. 311; State v. Thornhill, 174 Mo. 370; State v. Woodward, 191 Mo. 633; State v. Brooks, 202 Mo. 106; State v. Barrington, 198 Mo. 80. (2) It was entirely competent for the State to introduce in evidence the various judgments of conviction of appellant for the purpose of affecting the credibility of her evidence as a witness in the case. Sec. 4680, supra; State v. Blitz, supra; State v. Brooks, supra. (3) Appellant assigns as error the court's action in refusing to give instructions C, D, E and F,

requested by appellant. Each of these instructions
seeks to submit the case to the jury on the ground
of circumstantial evidence. There is no place in this
case for such a theory to be submitted to the jury.
The court instructed on alibi, which was defendant's
theory of the case. There was direct and positive evi-
dence in this case that defendant committed the crime
as charged, and it is only when conviction is sought
on circumstantial evidence alone, that such instruc-
tions are necessary and proper to be given. State v.
Donnelly, 130 Mo. 649; State v. Robinson, 117 Mo. 663;
State v. Moxley, 102 Mo. 374; State v. Maxwell, 42
Iowa 208.

BURGESS, J.—The prosecution in this cause was
commenced by the filing of an information by the prose-
cuting attorney of Pettis county in the circuit court of
said county, charging the defendant with a larceny of
$80 from the person of S. E. Scarlatt, in the night-
time, in the city of Sedalia, on the 6th day of Decem-
ber, 1907. The defendant was duly arraigned and
pleaded not guilty, and upon a trial for said charge
was found guilty and her punishment assessed at two
years in the penitentiary. From the sentence upon
this verdict, she has appealed to this court.

The evidence tends to establish the following facts:
The prosecuting witness left Higginsville, Missouri,
about eight o'clock on the evening of December 6, 1907.
He purchased a railroad ticket from Higginsville to
Stamps, Arkansas, over the Missouri Pacific and Iron
Mountain system. On leaving Higginsville he had $80
in paper money and some five dollars in silver. He
came to Sedalia on what is known as the Lexington
Branch of the Missouri Pacific system, reaching there
about 9:45 that night.

On his arrival at Sedalia, he went to the Missouri
Pacific depot, and remained there a short time, when

223 Sup—6

he discovered that he had lost one of his rubbers from his overcoat pocket, and he started out to buy a rubber. While on the street in search of an open store he was accosted by the defendant on two different occasions. On the first, she said that she must get away or they would catch her or something of that kind, and went. He, thereupon, continued his search for the store and she met him again, and he detailed the circumstances in this manner: "She came right up in front of me, my vest was open and my overcoat over my shoulder, and I had the money in here (indicating his inside vest pocket), I had eighty dollars in paper money in a pocketbook. I also had a railroad ticket. I had the pocketbook in this vest pocket. I had my head down and she came right up to me and grabbed me and ran her hands around and said, 'You are a nice fat old fellow,' and made a swipe around me and I did not think about the money, and it kinda excited me, and she let loose and went on. I did not miss the money until I got into the depot. She had on a red skirt and a big hat and a brown looking coat—I do not know whether it was a coat or not—and she was a yellow woman." Having discovered the loss of his money and railroad ticket, the prosecuting witness immediately notified the police, and the defendant was arrested within a very few minutes in McGurren's restaurant, near the depot, about eleven o'clock, and was taken to the police station where she was identified by the prosecuting witness as the woman who had robbed him on the street a few minutes prior thereto. When arrested the defendant wore a red skirt and a big hat and a brown looking cloak; she had six dollars in currency and four dollars and fifteen cents in silver on her person.

The pocketbook and railroad ticket were found about four o'clock on the following morning in front of Holdner's store, on the south side of Main street, by

a negro man. The money had all been taken from the pocketbook, and the railroad ticket alone remained.

Between ten and eleven o'clock on this same night, the defendant was seen by the witness Flossie Guy, a negro girl, on the south side of Main street, in front of said Holdner's store, where the pocketbook was afterwards found. Defendant was in a stooping position as if she was hunting something or tying her shoe. She afterwards had a conversation with this witness, Guy, in which she said that "the trouble Will and I had I need not say anything about. I did not have to bring it up at court; and about seeing her over at Holdner's, I need not bring that up."

When arrested on the night of the robbery, defendant stated to the police officer that she had just come down town and had not been on the street that night. After her arrest she was locked up in the city prison, and early on the following morning she secretly sent from the city prison her hat and cloak by a negro man. She was seen at McGurren's restaurant a few minutes before the arrival of the Lexington train from Higginsville, at which time she stated that she had no money to buy any drinks for a crowd of negroes, who were then at the restaurant, but that she was going out on the street and when she came back she would have money to buy drinks for the crowd. On her return to the restaurant about 11 o'clock, she bought three rounds of drinks for the crowd amounting to about $3.50, and was a free spender with her money.

She testified in her own behalf and stated that she came down town about 8:15 that evening to go to a show, but that her "dusky buck" was sick, and she then went to Houston's hall for a dance. She did not stay there long, but went from there to McGurren's, and then went back for the second time to the dance hall, and returned for the second time to the restaurant and remained there but a few minutes, when the police came in and arrested her. She denied paying for any

drinks, or exhibiting any money, or making any statement about her buying drinks, when she came back to the restaurant the second time.

On the following day, at the preliminary hearing in the justice's court, defendant had a sister there, dressed in red and wearing a cloak and dress very much like the defendant wore the night of the robbery; and her sister, on the advice of one of defendant's counsel was caused to change positions in the court-room with the defendant to see if the prosecuting witness was able to identify the defendant as the one who had robbed him on the previous night. And the prosecuting witness in a very positive manner pointed out defendant as the guilty party on that occasion.

Various records of former convictions of the defendant were offered and read in evidence, from which it appears that she was a habitual criminal of the most pronounced type.

The information is in all respects sufficient. The record is a very voluminous one and is interlarded with many objections, but we will consider those urged in the brief of the counsel for the defendant first.

I. It is insisted that the court should have instructed the jury on circumstantial evidence, and erred in refusing four instructions designated as C, D, E and F, which were requested by the defendant. The court did instruct on alibi, which was the defendant's theory of the case on the trial, and there was direct and positive evidence in this case that the defendant committed the larceny as charged in the information, and she was positively identified by the prosecuting witness as the person who went through his pockets and stole his pocketbook and money.

It has again and again been ruled by this court that it is only when a conviction is sought on circumstantial evidence alone, that it is necessary to give an instruction on the weight of circumstantial evidence.

[State v. Bobbitt, 215 Mo. l. c. 43; State v. Donnelly, 130 Mo. 642; State v. Fairlamb, 121 Mo. 137; State v. Robinson, 117 Mo. l. c. 663.] And in this connection it may also be remarked that in her motion for new trial, the defendant complains that the court did not instruct on the law of the case. There was no request to instruct on any other proposition except upon the law of circumstantial evidence and as the case was one of direct testimony, there was no harm in the court refusing to instruct on that subject, otherwise than it did in giving the very full and ample instruction on the presumption of innocence and reasonable doubt, and alibi.

2. There is no merit in the contention that the various judgments of conviction of the defendant of various offenses, were incompetent. Having made herself a witness, the defendant was then open to impeachment and cross-examination by the express provisions of section 4680, Revised Statutes 1899. [State v. Blitz, 171 Mo. 530; State v. Brooks, 202 Mo. l. c. 117 and 118, and cases cited.]

While the defendant makes a formal assignment of error in the instructions given by the court of its own motion, her counsel have pointed out no error in any specific instruction.

A careful examination of each and every one of the instructions given by the court demonstrates that they are such as have often received the approval of this court and there is no error in them or any one of them.

As to the assignment in the motion for new trial that the verdict was the result of passion and prejudice, we can only say that it is refuted by the whole record, which leaves no doubt whatever of the guilt of the defendant and contains no mitigating circumstances in her favor.

The judgment is therefore affirmed.

All concur.