## THE STATE v. ABE MILLER, Appellant.

Division Two, February 18, 1922.

1. **SUFFICIENCY OF EVIDENCE: Province of Jury.** It is the peculiar province of the jury in a criminal prosecution to weigh the evidence and determine the credibility of the witnesses.

2. ————: **Theft of Automobile: Alibi.** The evidence in this case is set out at length and fully reviewed, and *held* sufficient to sustain the verdict of the jury finding defendant guilty of having stolen an automobile, notwithstanding his wife, two children and three others testified that at the very hour the car was stolen from where it had been parked in front of a theatre he was at home with his family, and no witness testified to seeing him steal it.

3. **CORPORATION: Acts of President: Automobile License.** Where defendant, acting for a corporation as its president, on the next day after the automobile was stolen, secured from the Secretary of State a license number in the name of said company, to operate a car of the same character and make, on the representation that

State v. Miller.

it belonged to the company, and attached the number to the stolen car, it is immaterial whether he was acting for himself or for the company. The corporation could only act through its officers, agents and servants.

4. **INSTRUCTION**: Circumstantial Evidence. Where the State relies solely upon circumstantial evidence to establish the *corpus delicti* and defendant's connection with the theft of an automobile, it is error to refuse to give an instruction upon the law relating to circumstantial evidence.

5. ———: Stolen Automobile: Possession of Corporation. An instruction telling the jury that if the stolen automobile was at the time of the arrest in the possession of a corporation, of which defendant was president and manager, then such possession cannot be imputed to defendant and that he must be acquitted, does not state the law and should not be given in the trial of the defendant for larceny. If the evidence establishes that whatever possession the corporation may have had it acquired through the personal efforts of defendant himself, and that he participated in the theft, or pretended to buy the automobile with knowledge of the fact that it had been stolen and turned it over to his corporation, he is not entitled to an acquittal.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield*, Judge.

REVERSED AND REMANDED.

*Harry Friedberg, Clarence Wofford, Bert S. Kimbrell* and *J. Francis O'Sullivan* for appellant.

(1) The court erred in refusing to give the requested instruction, in the nature of a demurrer, at the close of all the testimony in the case, for all of the following reasons: (a) There is, in the record, no sufficient identification of the car recovered, as the car lost by Bundy. State v. Lackland, 136 Mo. 26. (b) There having been undisputed evidence introduced by defendant, the presumption running with possession of stolen goods, was not in this case. State v. Burns, 278 Mo. 447; Guthrie v. Holmes, 272 Mo. 233; Hays v. Hogan, 273 Mo. 1; Kilroy v. Crane Agency, 203 Mo. App. 310; McKenna v. Lynch, 233 S. W. 176. (c) Possession shown to be in a

corporation, of which defendant was but an officer, is insufficient, unless it was shown that defendant personally participated in the crime charged. State v. McAdoo, 80 Mo. 216; State v. White, 96 Mo. App. 34; State v. Runzi, 105 Mo. App. 319; State v. Vivano, 206 S. W. 235. (d) Possession to support a conviction, under the theory here presented, must be shown to be exclusive, personal, conscious and actual in defendant, and in this case no such showing was made. State v. Drew, 179 Mo. 315; State v. Castor, 93 Mo. 242; State v. Baker, 144 Mo. 329; State v. Belcher, 136 Mo. 137; State v. Warford, 106 Mo. 55; State v. Scott, 109 Mo. 226; State v. Owsley, 111 Mo. 450; State v. Burns, 263 Mo. 593. (e) The evidence is utterly insufficient to support a conviction, as, admitting every fact and circumstance the State proved to be true, they do not even tend to support the charge of grand larceny. All of the circumstances so proven are not inconsistent with defendant's innocence. State v. Dashman, 153 Mo. 454; State v. Fowler, 265 Mo. 199; State v. Lee, 272 Mo. 121; State v. Jones, 106 Mo. 302; State v. Morney, 196 Mo. 43; State v. Ruckman, 253 Mo. 487; State v. Counts, 234 Mo. 580; State v. Claybaugh, 138 Mo. App. 364; State v. Bass, 251 Mo. 107; State v. Gordon, 199 Mo. 696; State v. Donnington, 246 Mo. 354. (2) The court erred in giving upon behalf of the State Instruction 4. The instruction directs a verdict of guilty upon the failure of the defendant to explain his possession to the satisfaction of the jury, thereby completely ignoring the defense of alibi, a defense which completely and fully rebuts the presumption and entitles the defendant to an acquittal, if they have a reasonable doubt of the presence of the defendant at the time and place, but a defense which does not explain possession and a defense under which no explanation of possession is called for. State v. Sidney, 74 Mo. 390; State v. North, 95 Mo. 615; State v. Edwards, 109 Mo. 322; State v. Good, 132 Mo. 125; State v. Wright, 199 Mo. 161; State v. Helton, 234 Mo. 564; State v. Stubblefield, 239 Mo. Mo. 526; State v. Pate, 268 Mo. 442; State ex rel. v. El-

lison, 272 Mo. 1. c. 583; Orris v. Rock Island Ry. Co., 279 Mo. 17. The instruction does not require the jury to find that the possession was exclusive or conscious. State v. Drew, 179 Mo. 315; State v. Burns, 263 Mo. 599; State v. Kehoe, 220 S. W. 964. 'The last paragraph of the instruction is erroneous, in that it peremptorily casts upon the defendant the burden of establishing "the honesty or innocence of his possession," while the burden which the law imposed upon the defendant was to explain the predicated possession in a manner consistent with his innocence. State v. Lee, 225 S. W. 930; State v. Weiss, 219 S. W. 368; State v. Bruin, 34 Mo. 537. (3) The court erred in refusing the request of defendant to instruct the jury upon the law of circumstantial evidence. State v. Taylor, 111 Mo. 538; State v. Moore, 117 Mo. 395; State v. Barton, 214 Mo. 323; State v. Maggard, 250 Mo. 335; Beason v. State, 69 L. R. A. 198; White v. State, 18 Tex. App. 57; 25 Cyc. 150. (4) The court erred in refusing the offer of the defendant to prove that The Blue Auto Livery Company consisted of ten or twelve stockholders, that each of said stockholders owned more of the capital stock of said corporation than did the defendant, and that each of said stockholders was actively engaged in the management of the business. State v. Drew, 179 Mo. 315; State v. Burns, 263 Mo. 599.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) The court properly refused to give the instruction in the nature of a demurrer to the evidence. State v. Martin, 28 Mo. 538; State v. Babb, 76 Mo. 505; State v. Carlisle, 57 Mo. 106; State v. Napier, 65 Mo. 462; State v. Merkel, 189 Mo. 321; State v. Cox, 264 Mo. 408; State v. Burns, 263 Mo. 593; Thompson, v. State, 41 S. W. 638; 35 Cyc. 138. (2) Instruction 4 was properly given. State v. Jenkins, 81 Mo. 185; State v. Baker, 264 Mo. 339; State v. Burns, 263 Mo. 593; State v. Riney, 137 Mo. 102; State v. Vinton, 220 Mo. 102. (3) The

failure to instruct on circumstantial evidence was not error. Worshan v. State, 56 Tex. Crim. App. 253, 120 S. W. 439; State v. Overson, 30 Utah, 22, 83 Pac. 557; 17 R. C. L. p. 79, sec. 85.

RAILEY, C.—On May 6, 1919, an information was filed in the Criminal Court of Jackson County, Missouri, in which it is charged that defendant, Abe Miller, on February 17, 1919, in the county and state aforesaid, did unlawfully and feloniously steal, take and carry away one Ford sedan automobile, of the value of $800, the property of one F. E. Bundy, etc. He was arraigned and entered a plea of not guilty. On March 17, 1920, defendant was tried before the jury, and the latter, on said date, returned into court the following verdict:

"We, the jury, find the defendant, Abe Miller, guilty of grand larceny as charged in the information and assess his punishment at two years and ten months in the State Penitentiary.

KARL MENTZELTHIN, Foreman."

The evidence in behalf of respondent tends to show that F. E. Bundy, a resident of Kansas City, Missouri, on February 17, 1919, was the owner of a Ford sedan automobile; that about seven o'clock p. m. on said February 17th, said Bundy drove the above car to Westport Avenue and Main Street in Kansas City, Missouri, and parked the same there while he attended a picture show; that he remained at the show about two hours, and then returned to the place where his car had been left, and found that it had been stolen; that he (Bundy) never saw said car any more until about one month later, when he discovered it at the police station, and recognized it as his car, from certain marks which he had made on the pedals. He testified that he bought the car just five days before it disappeared; that when he bought it, the pedals would stick at the bottom on the foot board; that he took a heavy monkey wrench, and bent these pedals, which were made of malleable iron, and, in doing this, it left *scratches* on the pedals; that these scratches were

on the car when he found it at police headquarters, and the pedals were bent as he had left them when the scratches were made; that on the evening the car disappeared, he put in one *rear* spark plug, that was *different* from the three Champion Spark plugs which were on the car when he bought it; that when he recovered the car at police headquarters, the four spark plugs were just as he had left them; that when he got the car back, the number on it was not the same as when it disappeared; that he bought said car new, and only owned it five days before it was taken; that it had run about 200 miles; that when it disappeared there were two state license tags on the car, one at the front end and the other at the rear; that between the time of the disappearance and recovery of said car, the paint on same had been changed, so as to make the body of the car blue; that there was also some lettering put on the car doors after it was taken; that the value of said car when taken was $827; that he did not authorize any one to drive the car away, and had no knowledge that any one was going to drive it away, and did not expect it; that it was his car; that he could not say who took the car.

Mark Stone, paying and receiving teller of the Merchants' Bank, at 17 East 5th Street, Kansas City, Missouri, testified, in substance, that he knew defendant; that he kept defendant's account at said bank and had his identification card; that defendant wrote a great many checks on said bank; that defendant kept an account in the name of Abe Miller, which was later transferred to the Blue Auto Livery Company; that defendant signed all the checks which were drawn on said bank; that nobody else signed any of said checks; that respondent's exhibit 1 shown witness, was signed: "Blue Auto Livery Company, by Abraham Miller," and was in the handwriting of defendant; that the body of said exhibit was also in the handwriting of defendant; that no one was authorized to check on the bank but defendant, as to either of said accounts.

292 Mo.—9

J. J. Settle testified in behalf of the State, substantially as follows: That he was clerk of the Secretary of State, and had charge of the files in said office relating to applications for automobile licenses; that said exhibit 1 was an application for an owner's license of a Ford sedan; that it was on file in said office and produced at the trial under a subpoena; that the state license number was 91,198, and the license was issued February 18, 1919; that it was a 1918 model; that the application described it as a new car. (The above application was offered in evidence by the State, but is not set out in the record). Defendant, as part of Settle's cross-examination, offered in evidence exhibit A. It was a certificate, dated May 24, 1918, issued by the Secretary of State showing the incorporation of "The Blue Auto Livery Company." Counsel for the State admitted the incorporation of said company, and objected to said exhibit, which was excluded by the court.

It was admitted by the State that said company was incorporated before said car was stolen, and that it was still a corporation at time of trial. Thereupon defendant's exhibit B was excluded as evidence.

James Orford testified in behalf of the State, in substance, as follows: That he was a detective on the police department of Kansas City, Missouri; that in March, 1919, he recovered a Ford sedan automobile, which was afterwards identified by F. E. Bundy, as his car, which had been stolen the month before; that he found said car at Towne's Court at Independence Avenue; that it was taken to police headquarters at the City Hall, located at 4th and Main Streets, Kansas City, Missouri; that said Bundy identified the car as his after seeing it, and said car was turned over to him; that defendant was then arrested by McDermott, while the car was at the police station; that he asked defendant where he got the car, when and how he got possession of same; that defendant told him he bought the car from a man, but did not know his name; that he paid around $725 for it, but did not show any bill of sale; that he had no bill of sale; that he bought the car from some man on the street.

On cross-examination witness testified that he found the car in the possession of the chauffeur; that the lettering on the doors of said car read: "Blue Auto Livery Company, Telephone 7500 Main;" that he took defendant to the station, on suspicion that he had the stolen car in his possession; that he thought defendant had something to do with the stolen car; that the chauffeur was arrested, brought to the police station and afterwards released; that the chauffeur was released as soon as they found Miller; that defendant made no written statement.

On re-examination witness testified that defendant said he bought the car from a man on the street; that the car when recovered bore the motor number 2,874,245; that it then had a state license number on it, 91,198; that the motor number on the car had the appearance of having been changed. Witness further testified that he did not know who owned the car.

James McDermott testified in behalf of the State, in substance, as follows: That he arrested defendant on this charge and took him to the police headquarters; that he had been a member of the police force for about five years; that defendant was arrested between 14th and 15th Streets, on Baltimore Avenue, Kansas City, Missouri; that he was arrested within a few hours from the time said car was found in front of Judge Towne's Court; that defendant, in the presence of the Chief and witness, said, that he bought the car from some man on the street; that he was asked to state the name of the man, and said he did not know who he was, and said he got no bill of sale for the car. He said that he paid around $700 for the car, or $725; that when the car was found in possession of the Blue Auto Livery Company's chauffeur on Independence Avenue, it had on it "Blue Cab" and then "Main 7500." Said witness, in answering the court's question, testified as follows:

"Orford says, 'Abe, I want you to tell where you got the car, in front of the Chief and McDermott here,'

and he says, 'I bought it from a man on the street'."
That no written statement was taken from defendant.

Thereupon the State closed its case, and defendant
interposed a demurrer to its evidence, which was over-
ruled.

It was admitted by the State in open court, that the
Blue Auto Livery Company was organized as a Missouri
corporation in 1918; was duly licensed to do business in
Missouri; was in good standing as such corporation up
to date of trial, and that defendant, Abe Miller, was its
president. The court refused to permit defendant to
show that he was a minority stockholder in said company;
that ten or twelve other persons were interested in the
business, and that each of whom had as much access to
its property as did defendant.

Appellant did not testify as a witness in the case.
He lived with his family at 334 Washington Boulevard,
Kansas City, Kansas. Defendant's wife, a son and
daughter, as well as three Hebrew friends of defendant,
testified that they were present at Mrs. Miller's birthday
party on February 17, 1919, the night said car was stol-
en; that defendant and the above named parties were at
the residence of defendant from about six o'clock on
February 17, 1919, until after ten o'clock that night, and
that defendant was present during the whole of that time.

This concluded the testimony in the case. Defend-
ant renewed its demurrer to the evidence, which was
overruled. The instructions given and refused, as well
as the rulings of the court, will be considered, as far as
necessary, in the opinion. Defendant, in due time, filed
his motion for a new trial and in arrest of judgment.
Both motions were overruled, and the cause duly ap-
pealed by him to this court.

I. It is contended by appellant that the court erred
in overruling his demurrer to the evidence at the con-
clusion of the whole case. We have set out
Sufficiency
of Evidence. the facts very fully, and will only refer to the
evidence again in general terms.

It was the peculiar province of the jury to pass upon the facts and to weigh the evidence. The jurors were the sole judges of the credibility of the witnesses and of the weight to be given their testimony. The evidence is undisputed, that F. E. Bundy's car was stolen in Kansas City, Missouri, in the afternoon or night of February 17, 1919. Bundy had only owned the car about five days and, during that time, had bent the pedals of said car with a monkey wrench and, in so doing, marked or scratched the pedals. The car then had four Champion spark plugs, and Bundy changed one of the rear plugs, and replaced it with a different kind of plug. About one month after the above car was stolen, Bundy identified it at the police station as his car, by reason of said bent pedals, the scratches and spark plug in the rear of the car. He paid $827 for the car and bought it while new. It had only been run about 200 miles, and was repainted when found, although it had only been in use about one month. There was substantial evidence tending to show, that the car in controversy belonged to Bundy, and that it was stolen on the evening of February 17, 1919. Defendant claims that he established a complete alibi, which refuted the idea that he could have stolen the car. Bundy thought it was about seven o'clock p. m. when he parked the car, and went to the show. Defendant's wife, two children and the three Hebrew friends, gave it as their respective opinions that defendant arrived home about six p. m. and was not absent from his home up to ten or eleven o'clock that night. The jurors were not bound to believe this testimony as to the hour when defendant left Kansas City, Missouri. The jury may have believed from the evidence that defendant either took the car himself, that night, or knew it was going to be taken, for, on the very next day, defendant executed and mailed to the Secretary of State, at Jefferson City, Missouri, a written application for an owner's State license to operate a new Ford sedan, which turned out to be Bundy's car; that said application was signed, "Blue Auto Livery Co.," "by "Abram Miller, Pres." The Secretary of State issued

a State license on February 18, 1919, the next day after Bundy's car was stolen, and the license number was designated for said car, as 91,198. It was a 1918 model. James Orford, the police officer who recovered Bundy's car, said it contained the State license number 91,198 supra, thus showing that on the next day after the car was stolen, this defendant, in behalf of said Blue Auto Livery Co., secured a license from the State to operate Bundy's car, on the representation that it belonged to the above company. In addition to the foregoing, the evidence is clear that appellant told the police he had bought the car from an unknown man on the street. It was immaterial, whether he was acting for himself or the company in the above transaction. The corporation could only act through its officers, agents or servants. The evidence shows that defendant was acting as president of said company; that he transacted its business; that he drew the checks on its bank funds, and, finally, that he wrote the application for a license to operate Bundy's car. After said license reached defendant, with the license number 91,198, the latter was placed on Bundy's car, either by defendant or under his direction, and was there, at the time of its recovery by the police. From the foregoing facts, the jury had the legal right to find therefrom that defendant had Bundy's car in possession the next day after it was stolen; that he then applied for a license to operate the same, and that said car was still under his control and direction at the time it was taken from the chauffeur, by the police officer. It does not appear from the evidence, that Bundy's car was in possession of any person after it was stolen, up to the time of its recovery except the defendant, and the chauffeur in the employ of said company, of which defendant was its president and manager. The jury, therefore, had substantial evidence before it, tending to show that Bundy's car was stolen; that defendant was in possession of same within a short time thereafter; and that he made no satisfactory explanation as to his possession of said car.

From whom did defendant get the car? Did he have possession of it the next day after it was stolen, when he applied for a State owner's license to operate said car? Did he have possession of it when the license No. 91,198 was received by him and placed on said car? Did he change the paint on this new car and, if so, why did he do it? Aside from the alleged alibi, no evidence was introduced in behalf of defendant, tending to overturn the substantial evidence aforesaid as to his guilt. The above questions naturally suggested themselves to the jurors in passing upon the merits of the case. We are, therefore, of the opinion that defendant's demurrer to the evidence at the conclusion of the case was properly overruled.

II.    Appellant complains of the action of the trial court in refusing, at his request, to instruct **Circumstantial Evidence.** the jury upon the law of circumstantial evidence.

In a case where the State relies solely on circumstantial evidence for a conviction, the law is well settled that appellant is entitled to an instruction upon this branch of the law. In the case of State v. Hill, 65 Mo. l. c. 87-8, we said:

"The refusal of the second instruction was rightful because the court gave the following, correctly stating the law as applied to circumstantial evidence: 'The jury are instructed that they may from circumstantial evidence alone find the defendant guilty when the facts established are inconsistent with any other theory than that of his guilt, but in order to find the defendant guilty upon circumstantial evidence the facts proven must be wholly inconsistent with the innocence of the accused and incapable of explanation upon any other reasonable hypothesis than that of his guilt.' With this instruction given, which is a clear declaration of the law upon the subject of which it speaks, we cannot see that error was committed in refusing the instruction as asked."

The law relating to circumstantial evidence, as above stated, has been followed in many subsequent decisions of this court, some of which are as follows: State v. Moxley, 102 Mo. l. c. 388; State v. Woolard, 111 Mo. l. c. 255; State v. David, 131 Mo. l. c. 398-9; State v. Hubbard, 223 Mo. 80, 122 S. W. 694; State v. Maggard, 250 Mo. l. c. 342-3, 157 S. W. 354; State v. Thompson, 222 S. W. (Mo.) l. c. 790.

The evidence heretofore set out, clearly shows that the State relied upon circumstantial evidence to establish the *corpus delicti* in this case; and that circumstantial evidence was also relied on by the State, to establish defendant's connection with the larceny. We are, therefore, of the opinion, that the trial court erred in refusing to give, at the request of defendant, an instruction upon the law relating to circumstantial evidence.

III. It is insisted by appellant that the court erred in refusing to give his instruction numbered one, which reads as follows:

"The court instructs the jury that if you believe and find from the evidence that the au-

Stolen Automobile: Possession by Corporation.

tomobile mentioned in evidence was at the time of the arrest of defendant in the possession of The Blue Auto Livery Company, a corporation, the owner of the Blue cabs, then such possession, in the corporation, cannot be imputed to the defendant herein, because of his being a stockholder of said corporation, and it is your duty to acquit the defendant."

This instruction announces a startling proposition of law. In legal effect, it said to the jurors, notwithstanding you may believe and find from the evidence that defendant participated in the stealing of Bundy's car, or that he pretended to buy and pay for same, with knowledge of the fact that it had been stolen, still you cannot convict him, if he had the car delivered to the Blue Auto Livery Company, of which he was president and manager, and it was thereafter found in the pos-

session of said company's chauffeur when recovered by the police officer and turned over to Bundy. As heretofore stated, the corporation could only act through its officers, agents or employees. The jurors were justified in finding from the facts heretofore stated, that whatever possession the Blue Auto Livery Company may have had in respect to said stolen car, it acquired through the personal efforts of the defendant himself. If, therefore, the jury believed from the evidence, he participated in the theft of said car, or pretended to buy the same with knowledge of the fact that it had been stolen, and turned it over to his corporation under such circumstances, he was not entitled to an acquittal in this case. [State v. Baker, 264 Mo. 1. c. 354-5; State v. Jenkins, 213 S. W. (Mo.) 1. c. 799; State v. Kehoe, 220 S. W. (Mo.) 1. c. 963-4; State v. English, 228 S. W. (Mo.) 1. c. 751.]

We are of the opinion that the court committed no error in refusing above instruction.

IV. It is contended by appellant that instruction four, given by the court, does not properly declare the law.

It is not necessary to analyze said instruction with the view of determining whether it properly declares the law. It is objectionable in form and contains a repetition of the same matter. In the re-trial of the case, we would suggest that the form of instruction approved by this court in State v. Weiss, 219 S. W. (Mo.) 1. c. 370, or in State v. Lee, 225 S. W. (Mo.) 1. c. 930, be used in lieu of the above, or that one of a similar character be substituted therefor.

Form of Instruction.

V. In view of the facts heretofore set out, we deem it unnecessary to review the other instructions which were asked by defendant and refused by the court. In our opinion, they do not properly declare the law applicable to this case, and were properly refused.

Other Instructions.

VI. On account of the error heretofore pointed out, in respect to the court's refusal to instruct on circumstantial evidence, the cause is reversed and remanded for a new trial. *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.