**STATE of Missouri, Respondent,**

**v.**

**Harold COBB, Appellant.**

**No. 53332.**

Supreme Court of Missouri,
En Banc.

Sept. 8, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Michael J. Yatkeman, Special Asst. Atty. Gen., Clayton, for respondent.

James E. Durley, Sedalia, Atty. for appellant.

STORCKMAN, Judge.

A jury convicted the defendant Harold Cobb of burglary in the second degree and stealing in connection therewith and fixed his punishment at two-years imprisonment on each charge. The court ordered the sentences to run consecutively and not concurrently. Section 560.110, RSMo 1959, V.A.M.S. The defendant was ably represented in the trial court by court-appointed counsel who also represents him on this appeal. A codefendant Ernest Greer was also convicted, but his conviction was set aside because it was discovered that he was under seventeen years of age when the crime was committed. The defendant Cobb is the sole appellant. He attacks the sufficiency of the evidence to support the verdict the giving of certain instructions, and allowing the state during the trial of the case to amend the information and to endorse on it the names of additional witnesses.

On February 27, 1967, at approximately 4:25 a. m., in response to a burglar alarm, a police patrol car was dispatched to a drug store owned and operated by Bingaman's No. 1 United Super Market, Inc., which was located at the State Fair Shopping Center in Sedalia. It had been raining and the pavement was wet. The evidence most favorable to the verdict shows that when the patrol car arrived at the parking lot the police officers, James Tuttle and Charles Shepherd, saw a GTO Pontiac automobile occupied by the defendant and three other persons about 20 feet from the north door of the drug store, sometimes referred to as Bing's or Bing's No. 1. The lights on the Pontiac were completely off and it was moving slowly. As the patrol car entered the parking lot, the Pontiac accelerated and was driven rapidly from the parking lot. As it turned left on Limit Avenue, the rear end "fishtailed" and the car skidded into a ditch; it then came back across the highway and stalled in the middle of the road and crossways of it.

The police officers stopped their patrol car near the stalled Pontiac and ordered the occupants to get out on the driver's side. Ernest Greer was driving and left the car first. The defendant Cobb was riding on the right side of the front seat and got out next. A boy by the name of Herbert Horton and a girl whose name was once given as Courtney Bell were in the back seat and got out last. As the occupants of the Pontiac were getting out, a second patrol car occupied by officers Robert Lewis and James Curry arrived and assisted in searching the occupants, handcuffing them, and taking them to the police station.

An investigation at the drug store disclosed that a window beside the front door had been broken. The dimensions of the window were estimated by some witnesses as 6 feet by 4 feet and by others as 3 feet wide by 8 or 10 feet high. Approximately half or ¾ths of the glass had been broken out of the window. The opening was large enough to admit a man's body. There were fragments of glass both inside and outside the building. A heavy metal container or basket for carrying four gallons of milk

was found on the walk immediately in front of the broken window. There were fragments of glass in the container.

A number of bottles containing prescription drugs which were on a shelf when the store was closed the night before were missing. The missing articles were found in a carton on the floor of the Pontiac automobile behind the right front seat occupied by the defendant Cobb. The drug items were identified at the trial as being the property of the owner of the store and as having been stolen from the store.

The GTO Pontiac was a two-door sports model with bucket seats in front. To permit a person to leave or enter the back seat, one of the side doors had to be opened and then the back of the front seat pushed forward. If the door was not opened first, the back of the front seat when pushed forward would strike and get caught on the door handle.

The defendants Cobb and Greer were the only witnesses for the defense. Their testimony tended to show that they and two other men left Kansas City for Jefferson City in two automobiles at about 8:30 p. m. on the day before the burglary was committed. The men were accompanied by four girls, two of whom were students at Lincoln University. After they arrived in Jefferson City, they spent some time at a cafe drinking 3.2 beer since the students were not required to check into the University until midnight. On the return trip to Kansas City, the occupants of the GTO Pontiac were the defendants Greer and Cobb, Herbert Horton, and Courtney Bell who was referred to as a sixteen-year old girl.

According to the testimony of Cobb and Greer, Horton was driving the GTO, Greer was on the right side of the front seat, and Cobb and the girl were in the rear seat. Cobb testified that he did not know what time they left Jefferson City, that he went to sleep shortly thereafter and was aware of nothing that happened until he was awakened by lights of the patrol car flashing on the stalled GTO in Sedalia and Horton saying that everybody must get out.

Greer testified that he, too, fell asleep on the return trip but that Horton awakened him in Sedalia and told him he was going to look for a girl he knew there. Greer went back to sleep and after an hour or two Horton again awakened him and asked for money to get sandwiches and coffee. They were at a filling station and Greer went in and relieved himself, returned to the car, again fell asleep, and the next time he woke up was when the officers told him to get out of the car. Greer denied that he was the driver of the Pontiac and testified that the car belonged to a friend of Horton's but the testimony as to ownership was quite vague and uncertain.

The defendant Cobb testified that he was twenty-seven years old at the time of the trial. It is not a vital factor in the case, but there is some indication in the record that Horton and the girl, as well as Greer, were under seventeen when the crime was committed.

The appellant contends that the state failed to prove that he burglarized the store or that he aided or abetted or associated himself with the venture in any way and, therefore, the verdict and judgment are contrary to the evidence and against the greater weight of the credible evidence. He relies mainly on State v. Irby, Mo., 423 S.W.2d 800, for the proposition that something more than mere presence at the scene of the crime must be shown in order to convict; on State v. Castaldi, Mo., 386 S.W.2d 392, for the proposition that evidence that the accused had an opportunity to commit a crime or which merely raises a suspicion or gives rise to conjecture is insufficient to support a judgment of conviction; and on State v. Butler, Mo., 310 S.W.2d 952, for the proposition that some form of affirma-

tive participation must be shown. These rules are well recognized but more than mere presence and an opportunity to commit the crime are involved in this case.

The presence of the accused at the place of the commission of a criminal offense may be considered along with other incriminating evidence to determine if the total circumstances raise a reasonable inference that the accused was a participant or an aider or abettor in the crime. State v. Ramsey, Mo., 368 S.W.2d 413, 418[9]; State v. Castaldi, Mo., 386 S.W.2d 392, 395[2]. Evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction. State v. Butler, Mo., 310 S.W.2d 952, 957[7]; State .v. Ramsey, Mo., 368 S.W.2d 413, 418[9].

The defendant argues, however, that the evidence merely shows that he was a passenger with three other persons in the automobile seen leaving the vicinity of the burglarized store and containing the stolen merchandise, and that the evidence shows he was asleep at all times while the group was in Sedalia until awakened by red lights flashing. Even in cases where the evidence is wholly circumstantial, the evidence tending to support the verdict must be considered as true, contrary evidence must be disregarded, and every reasonable inference in support of the verdict must be indulged. State v. Webb, Mo., 423 S.W.2d 795, 799 [6]; State v. McGlathery, Mo., 412 S.W.2d 445, 447[2]; State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 118–119[1]. For present purposes we must disregard entirely the testimony of Cobb and Greer that Cobb was asleep at the time the burglary and stealing occurred.

The bulk and nature of stolen property has a bearing on the manner in which it may be possessed. Fourteen bottles of prescription drugs in a cardboard box identified as the property stolen were found in the GTO Pontiac. The bottles almost filled the carton. In State v. Prunty, 276 Mo. 359, 208 S.W. 91, 94–95, this court stated that "the character of the possession is determined by the kind and character of the property. In order to raise the presumption, it is not always necessary to show actual manual possession. Some things are not capable of being carried in one's pocket. The traveling bag in question was not." The opinion gives further examples from other cases.

The possession of recently stolen property which will support an inference of guilt may be a joint possession of the accused and others and such possession need not be separated from all possession by others. State v. Webb, Mo., 432 S.W.2d 218, 222[5, 6]; State v. Webb, Mo., 382 S. W.2d 601, 604[4–6]; State v. Jordan, Mo., 235 S.W.2d 379, 383[10]; State v. Oliver, 355 Mo. 173, 195 S.W.2d 484, 486[6, 7]; State v. Conley, Mo., 238 S.W. 804, 806[3, 4]; State v. Kehoe, Mo., 220 S.W. 961, 964 [3]; State v. Prunty, 276 Mo. 359, 208 S.W. 91, 95[3, 4]; State v. Baker, 264 Mo. 339, 175 S.W. 64, 68[8].

The Prunty case is factually similar to the instant case in many respects. A traveling bag containing burglary tools and money stolen from a bank in Farber, Missouri, was found in a Ford automobile driven by Harry Funk in Peoria, Illinois, approximately 150 miles from Farber. The defendant Prunty was a passenger in the car. Tracks similar to those made by the Ford and the footprints of three men were observed in a field about three-quarters of a mile from the bank that was burglarized. The opinion in the Prunty case states the defendant's contention as follows: "The particular respect in which the state failed to make out its case, it is claimed, was its inability to prove the possession of the stolen property in the defendant. It is asserted that, in order to raise a presumption of guilt which would authorize conviction, it must be shown that such possesssion was exclusive in the defendant, was personal, actual, and not constructive. Instructions in the usual form regarding such presumption were objected to, and error assigned to giving them." 208

S.W. at p. 94. The defendant further asserted that exclusive possession of the traveling bag containing burglary tools and the loot was not shown because there was evidence that a third person was present who owned the car. The court held that the two men, Funk and Prunty, were in apparent exclusive control of the car and affirmed Prunty's conviction. Harry Funk was convicted at a separate trial and his conviction was also affirmed at 208 S.W. 97 on the authority of the Prunty case.

In State v. Kehoe the defendant was a passenger in a stolen automobile. The driver and the defendant were held to be in joint possession. The opinion states, 220 S.W. at pp. 963–964: "When appellant was apprehended, he and Ray Hake were driving the car at a rapid rate and increasing their distance from St. Louis as fast as possible. The officer who intercepted them was obliged to drive at 60 miles an hour in order to overtake them, and arrested them at the point of a gun. It was not necessary to show that Kehoe individually was in exclusive possession of the automobile, but that the two defendants who were jointly indicted were in exclusive joint possession. A case very similar to this in respect to such possession is State v. Prunty, 276 Mo. 359, 208 S.W. 91, where the authorities are reviewed. In that case two alleged bank robbers were found in an automobile in which was a grip containing the loot from the burglarized bank. It was held that the possession of defendant was such as to authorize the usual instruction in regard to possession of recently stolen property, although he was not driving the car. See also, as to possession by one of two or more persons charged with a joint larceny. State v. Baker, 264 Mo. 339, loc. cit. 355, 175 S.W. 64; State v. Phelps, 91 Mo. 478, loc. cit. 483, 4 S.W. 119; State v. Toohey, 203 Mo. loc. cit. 679, 680, 102 S.W. 530.

In State v. Conley, the defendant and two others, Lewis and Rossi, were jointly charged with robbing a Kansas City bank. The defendant was tried separately and appealed his conviction. The three men were arrested in Chillicothe later on the same day the robbery occurred. The arresting authorities found in the automobile three suitcases in each of which was about $500 in currency and coins identified as part of the stolen money. Weapons were also found in the automobile. There was evidence that the defendant and his companions, Lewis and Rossi, had been in Kansas City and were in and about the bank on the day of the robbery. The defendant was identified by a bank patron as one of the five men who took part in the robbery. The defendant testified that he had picked up Lewis and Rossi, that he did not know them before that time, and that he did not know what they had in the suitcases. In ruling the contention that the proof of possession was insufficient to support an inference of guilt, the court states, 238 S.W. at 806:

"[3] II. As to what constitutes exclusive possession of stolen property sufficient to sustain a legal presumption of guilt has several times been considered by this court.

"In State v. Prunty, 276 Mo. 359, 208 S.W. 91, a well-considered case by Commissioner White, this question was carefully and exhaustively reviewed, and the cases in relation thereto compiled. The gist of the ruling in the Prunty Case is that proof of actual manual possession by the defendant of recently stolen property is not necessary to raise the presumption, but that such possession may be determined by the kind and character of the property, and we may add, as we said in State v. Jenkins (Mo.) 213 S.W. 796, the proof of such surrounding facts in relation to the possession as may be shown in each particular case.

"[4] Therefore, when it was shown that the three men were traveling together in the automobile, supplemented with the other facts connecting them with the crime, it will not avail the defendant as an objection to the exclusiveness of the possession of the

stolen property that it may have been found in the suit cases belonging to the other two men rather than that of the defendant. We very recently so ruled in State v. Kehoe (Mo.) 220 S.W. 961, supplementing and affirming what had been theretofore said on this subject."

The Prunty case and others following it remain in good standing and we approve and reaffirm the rules announced therein regarding the extent to which a passenger may be charged with possession of stolen property found in the motor vehicle in which he is riding. It should be noted, however, that it is now recognized that possession of stolen property does not raise a presumption of guilt but is only a circumstance from which guilt may be inferred as a matter of fact. State v. Linders, Mo., 246 S.W. 558, 560[3].

The evidence in the instant case is much stronger than in the case of State v. Watson, Mo., 350 S.W.2d 763, in that the defendant Cobb was shown to have been at the scene of the crime and had an opportunity to commit it in addition to being a passenger in the car transporting the stolen property. In view of subsequent developments, however, it appears that Watson may unduly constrict the rule as to what constitutes possession of stolen property sufficient to permit a factual inference of guilt. It follows that the Watson decision to the extent that it conflicts with the present case should not be followed.

Stolen property found in an automobile in which the defendant is a passenger near the scene of a burglary is admissible against the defendant at his trial for burglary without showing that the defendant had any interest in or right to possession of the automobile. State v. Fields, Mo., 442 S.W.2d 30, 34[6]; State v. Ramsey, Mo., 368 S.W.2d 413, 418[8–10]. We hold under all of the evidence and circumstances in this case that the defendant jointly with others had actual and exclusive possession of the merchandise stolen from the drug store.

An inference of guilt is permissible from the unexplained possession of property recently stolen in a burglary and the inference exists both as to the offense of burglary and of stealing. State v. Fields, Mo., 442 S.W.2d 30, 35[10]; State v. Kennedy, Mo., 396 S.W.2d 595, 598[2]; State v. Durham, Mo., 367 S.W.2d 619, 621[2]. However, the jury determines the credibility of the defendant's explanation of his possession of the stolen property, and even though such explanation was not impeached, the jury was entitled to disbelieve it and draw an inference unfavorable to him based on his possession. State v. Worsham, Mo., 416 S.W.2d 940, 942[2]; State v. Durham, Mo., 367 S.W.2d 619, 622[4]. Quite understandably, the jury did not believe the defendant's story that he slept through the din that must have attended the breaking of the large window of the drug store with a 10-pound metal milk carrier approximately 20 feet from the automobile, the disturbance of depositing the stolen drugs in the rear portion of the two-door GTO Pontiac, and the unusual movements of rapid acceleration, fishtailing and skidding of the car. We hold that the evidence was sufficient to make a case for the jury and it supports the verdict returned.

Next the defendant contends that the court erred in giving instruction 1, 7, 9, and 13, in that they were unfairly repetitious comments on the charges and overemphasized the possibility of defendant's guilt. Instruction 1 in the respects objected to hypothesized a finding that defendant Cobb was guilty of second-degree burglary, that he was also guilty of stealing, that he was not guilty of burglary but was guilty of stealing under fifty dollars, and instructed the jury as to the penalty in each instance. Instructions 7, 9, and 13, respectively, informed the jury as to the form of verdict on finding the defendant guilty of burglary and stealing, burglary only, and stealing under fifty dollars only. The appellant does not urge that these instructions are errone-

ous in form or substance. He only charges that they are unfairly repetitious citing State v. Edmonds, Mo., 347 S.W.2d 158, State v. Miller, 292 Mo. 124, 237 S.W. 498, and State v. Soper, 207 Mo. 502, 106 S.W. 3. The cases state the well-established rule that instructions should not be repetitious; however, they do not support a charge of prejudicial error.

■■■ This is a joint prosecution for burglary and larceny under § 560.110, RSMo 1959, V.A.M.S. The giving of distinctive instructions dealing with the offenses charged is a proper method of submitting multiple offenses and is not prejudicially erroneous as being unfairly repetitious comments on the charges. State v. Edmonds, Mo., 347 S.W.2d 158, 162[10]; State v. Tucker, 333 Mo. 171, 62 S.W.2d 453, 456[6]. The contention is denied.

The defendant further asserts that the court erred in allowing the state to endorse the name of Prentice Rooks on the information as a witness during the trial. The store manager, Robert K. Jones, testified and among other things undertook to identify the bottles of drugs stolen and to establish their ownership but conceded on cross-examination that the pharmacy took care of that part of the business and he was not familiar with it. At the conclusion of his testimony, the prosecuting attorney asked and received permission to endorse the name of the pharmacist Mr. Rooks as a witness to the ownership of the drugs. The defendant's objection was that the need of the witness should have been anticipated, that the defendant was taken off guard and had no opportunity to talk to the witness. At the court's suggestion, defendant's counsel talked with Mr. Rooks and made no further objection. The witness testified in regard to the ownership, the value of the drugs, and their location in the store. He was cross-examined by the defendant.

■■■ Supreme Court Rule 24.17, V.A.M.R., provides that the names of all material witnesses shall be endorsed on the indictment or information when it is filed and that the names of other witnesses may be added at any time upon order of the court and after notice to the defendant or his attorney of record. This court seeks to discourage delay in endorsing the names of additional witnesses but recognizes that late endorsements must sometimes be permitted if they can be made without prejudice to the defendant's rights. The defendant now says that he was deprived of an opportunity to examine the jury panel as to their relationship, acquaintance or association with the witness, but prejudice in this respect has not been demonstrated. There was no claim of surprise or motion for continuance and the nature of the witness's testimony was such as to negate any disadvantage to the defendant by lack of earlier notice. The trial court has a broad discretion in permitting the endorsement of the names of additional witnesses on the information or indictment. State v. Thost, Mo., 328 S.W.2d 36, 38[4]. The trial court did not err in permitting the endorsement. State v. Arrington, Mo., 375 S.W.2d 186, 189–190[2]; State v. Churchill, Mo., 299 S.W. 2d 475, 478[10]; State v. Carson, Mo., 286 S.W.2d 750, 753[6].

■■■ The defendant's final contention is that the court erred in allowing the state to amend the information by changing the name of the corporation whose premises were alleged to have been burglarized and its property stolen. During the trial the name of the owner was changed from "Bing's United Super No. 1 (468)" to "Bingaman's No. 1 United Super Market, Inc.,". The stated location of the store at 1400 Block South Limit Avenue in Sedalia was not changed. The defendant objected on the ground the information was available at any time since the charges were filed against the defendant. Such an amendment is permissible if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. S.Ct. Rule 24.02, V.A.M.R., and § 545.290, RSMo 1959, V.A.M.S. The offenses charged remained the same after the amendment was made and the defense was

equally applicable to the amended information. There is no showing that any substantial right of the defendant was prejudiced in any respect and the trial court did not err in permitting the amendment. State v. Aston, Mo., 412 S.W.2d 175, 182[10, 11]; State v. Taylor, Mo., 375 S.W.2d 58, 62–63 [7–10]; See also Stanfield v. State, Mo., 442 S.W.2d 521, 522[1, 2].

We have considered all questions presented and find them to be without merit. Accordingly, the judgment is affirmed.

HENLEY, C. J., and FINCH, MORGAN and HOLMAN, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

DONNELLY, Judge (dissenting).

I would apply the following rules to the facts in this case:

(1) A recent, unexplained, and exclusive possession of stolen property will support an inference of the guilt of the possessor.

(2) To "create an inference of guilt, the term 'exclusive' does not mean that the possession must be separate from all others * * *." State v. Oliver, 355 Mo. 173, 176, 195 S.W.2d 484, 486.

(3) However, in situations where joint possession is claimed, there must be *other* evidence to connect defendant with the offense. State v. Oliver, supra; State v. Crawford, 59 Utah 39, 201 P. 1030.

In my opinion, the "other evidence" adduced in this case is not sufficient to show defendant *participated in the burglary*.

I respectfully dissent.

SEILER, J., concurs.