THE STATE v. PEARL BAKER, Appellant.

Division Two. March 30, 1915.

1. **FORMER ACQUITTAL: Motion to Quash Information: Replication.** A plea of *autrefois acquit* cannot be raised by an ordinary motion to quash the information; the proper procedure, if defendant wishes to present the issue that he has been previously acquitted of the identical offense, is to do so by a special plea in bar. Primarily a motion to quash is directed to matters of form; to raise such issues as require for their proof or illumination evidence *aluinde,* pleas in bar, or pleas in abatement, or special pleas in bar, are used. And while it is the practice for

State v. Baker.

the State to file a replication to a special plea of *autrefois acquit*, defendant cannot complain that no replication to his motion to quash was filed, because that issue cannot be raised by such motion.

2. ————: Abandoned Information. Where the prosecuting attorney filed a duplicitous information, in one count of which he charged defendant with stealing turkeys from one woman and in the other with stealing goslings from another woman (the prosecutrix), and before any plea or trial thereon was had, filed two separate informations, in one of which defendant was charged with stealing the turkeys and in the other with stealing the goslings, and defendant was tried on the information charging him with stealing the turkeys and acquitted, but was never tried upon the information having two counts, nor upon the separate information charging him with stealing the goslings, he is not, upon the facts, entitled to his discharge on the ground of former acquittal, on his trial upon another information charging him with stealing the identical goslings.

3. PUNISHMENT: Severity. Passion or prejudice on the part of the jury is not inferable from the severity of the punishment, if it falls substantially short of the maximum prescribed by the statute.

4. LARCENY: Goslings: Identity. Where no other necessary matter of proof is called in question except the identity of the four Emden goslings found at defendant's house with those stolen from the prosecutrix's coop, and they were positively identified a week later by prosecutrix as her own, and defendant and his wife testified they were raised by defendant's wife and belonged to her, the question of identity, and consequently of larceny, is properly for the jury only.

5. MISCONDUCT OF COUNSEL: Improper Evidence: No Objection or Exception. The offering of testimony utterly inadmissible, and the filling of the record with things which utterly disregard defendant's rights, done by hired counsel for the State in their zeal to richly earn their fees, if not objected or excepted to, are not saved for review on appeal.

6. ————: Improper Argument. Argument to the jury of hired counsel, reprehensible in the extreme, if not objected to by defendant, and if the court did not rule, nor was asked to rule, and if no objection was made or exception saved to his lack of action in failing to rule, and all defendant did was simply to except to the remarks, is not saved for review on appeal.

7. INSTRUCTION: Defining Feloniously. Where the statute which defines the offense does not use the word "feloniously," an instruction cannot be held to be erroneous for the simple

reason that it does not contain the word or by any circumlocution define it.

8. ————: Possession Authorizing Presumption of Guilt: Exclusive. A possession authorizing the jury to presume that defendant stole the stolen goslings is not required to be exclusive, but if the goslings are shown to have been stolen and were soon afterwards found in the joint possession of defendant and his wife in their poultry yard, there is such possession as authorizes an instruction authorizing the presumption that defendant stole the goslings. [Following State v. Phelps, 91 Mo. 478.]

9. ————: Search Warrant: Retention of Property by Sheriff. An instruction telling the jury that when a search warrant is served by the sheriff, the State has the right to cause the sheriff to retain the property found and alleged to have been stolen, for use as evidence, should be refused, since he has no right in law to retain it for that purpose, and where it is not offered in evidence the instruction is out of harmony with the facts; and there is nothing in the subject-matter of such an instruction, of a legal sort, which brings it within the category of instructions which the court is compelled to give of his own motion.

10. ————: Instruction: Irrelevant Matter. An instruction that is a bald comment on an immaterial and irrelevant matter, should be refused; for instance, an instruction which tells the jury that when defendant's wife testified in chief that she was at the time of the alleged larceny in a distant city, the State had the right to cross-examine her as to why she went there and what she was doing there. If the State's counsel attributed to her conduct not justified by the evidence, a prompt oral objection would have saved the point.

11. UNFAIR TRIAL: Reversal: Appellate Practice. Although upon the whole case defendant did not get a fair trial, yet if those things which would have been error if properly preserved for review, were not so preserved, and there is no error in those matters properly preserved, the judgment must be affirmed.

Appeal from Clark Circuit Court.—*Hon. N. M. Pettingill*, Judge.

AFFIRMED.

*John A. Whiteside, Oliver C. Clay* and *A. F. Haney* for appellant.

(1) The trial court erred in overruling the motion filed by defendant to quash the information and dis-

charge defendant. State v. Wear, 145 Mo. 162; Ex parte Jilz, 64 Mo. 205. (2) The trial court erred in refusing to give the instruction asked by defendant at the close of the evidence directing the jury to find the defendant not guilty. There is no substantial evidence to support the verdict. The evidence by which defendant's guilt is sought to be established is wholly circumstantial. When a conviction for felony rests altogether upon circumstantial evidence, the circumstances proved must be inconsistent with the hypothesis that the defendant is innocent and with every other rational hypothesis except that of guilt. State v. Morney, 196 Mo. 49. Suspicion, or even strong probabilities of guilt, will not supply the place of evidence, in establishing guilt. State v. Francis, 199 Mo. 692; State v. Young, 237 Mo. 170. Unless there is substantial evidence of guilt, the court should instruct the jury to return a verdict of not guilty. State v. Young, 237 Mo. 170. Where there is no substantial evidence of guilt, the judgment should be reversed and the defendant discharged. State v. Morney, 196 Mo. 51. (3) The possession by defendant's wife of the alleged stolen goslings, on defendant's premises, will not raise any presumption of guilt against defendant. State v. Drew, 179 Mo. 322; State v. Castor, 93 Mo. 250; State v. Warford, 106 Mo. 63. To raise the presumption of guilt against the defendant arising from the possession of recently stolen property, the stolen property must be found in his actual and exclusive possession. State v. Hammons, 226 Mo. 604; State v. Baker, 144 Mo. 329; State v. Belcher, 136 Mo. 137; State v. Drew, 179 Mo. 322; State v. Castor, 93 Mo. 250. (4) The court erred in giving instruction No. 4 on the part of the State. It improperly applies to defendant the presumption of guilt arising from possession of recently stolen property. State v. Warford, 106 Mo. 61-64. It erroneously excludes from the consideration of the jury the defense of alibi. State v. Edwards,

109 Mo. 321; State v. North, 95 Mo. 615; State v. Sidney, 74 Mo. 390. This last error is not cured by the giving of defendant's general instruction on alibi. That would simply present a case of conflicting instructions. State v. Wright, 199 Mo. 166. (5) The court should have given instruction B asked by defendant at the close of the argument, for the purpose of curing the effect of certain improper remarks made by the State's counsel. (6) The verdict is the result of the passion and prejudice of the jury. This is shown by the disparity between the punishment of three years' imprisonment in the penitentiary assessed and the petty character and extent of the offense charged against defendant; and by the absence of aggravating circumstances. This is also shown from the weak and unsubstantial character of the evidence against defendant. (7) The improper remarks indulged in by counsel for the State are such as to arouse the prejudices of the jury, and being suffered to go unrebuked by the court, should be considered along with the disparity between the penalty assessed and the petty character of the offense in disclosing the fact that the verdict is the result of passion and prejudice. State v. Rose, 178 Mo. 33; State v. Kyle, 259 Mo. 401.

*John T. Barker,* Attorney-General, and *Lee B. Ewing,* Assistant Attorney-General, for the State.

(1) The court properly held against appellant's plea in bar, erroneously termed motion to quash information. The plea was former acquittal. There was absolutely no proof that appellant formerly had been placed upon trial for the offense in the instant case, and had been acquitted of the charge. State v. Oakes, 202 Mo. 86; State v. Laughlin, 180 Mo. 342; State v. Andrews, 27 Mo. 267; State v. Surall, 31 Mo. 197; State v. Hussey, 145 Mo. App. 671; State v. Polk, 144 Mo. App. 326; State v. Heath, 8 Mo. App. 99. The

record entries offered- in evidence in support of the plea in bar, do not show that defendant ever before had been put upon trial on the charge in the instant case. Therefore, the trial court cannot be convicted of error in finding against the plea in bar herein. (2) The court properly refused appellant's instruction, in the nature of a demurrer to the evidence, at the close of all the testimony. (3) The bill of exceptions shows that appellant objected to certain remarks of State's counsel in their argument to the jury, but it does not show the ruling of the court thereon, or that any ruling was made, or that any exception was saved to any ruling or to the failure of the court to make a ruling. Therefore, there is nothing in this matter that this court will review. State v. Williams, 186 Mo. 138; State v. Walker, 194 Mo. 264; State v. Whitsett, 232 Mo. 529; State v. Phillips, 233 Mo. 306; State v. Sauva, 234 Mo. 571. (a) The court did not err in refusing appellant's instruction "A" relative to counsel's improper argument at the close of the argument. There had been no exception saved to the ruling of the court, or his failure to rule, when objection was made to counsel's argument. Besides, this instruction does not correctly state the law (See R. S. 1909, sec. 5231) and is not based on any evidence in the case. (b) Appellant's instruction "B," offered at the close of the argument, was properly refused for the reason set forth above. (4) Appellant's numerous objections as to the sufficiency of the evidence are without foundation. The evidence on the part of the State showed that the goslings in question were stolen on the night of June 16, 1912, and on June 21st were found in the possession of appellant and his wife. Appellant's evidence that the goslings were his wife's and that she had raised them, and the prosecuting witness was mistaken in her identification of them, was strongly contradicted by the State. The possession of stolen property was not satisfactorily accounted for by

appellant.  The evidence of defendant's guilt was clear and fully warranted the verdict of guilty. State v. Estis, 209 Mo. 288; State v. McGhee, 212 Mo. 95; State v. Venton, 220 Mo. 90; State v. Court, 225 Mo. 609. There was evidence of the theft. Its weight and the credibility of the witnesses was for the jury. State v. McDowell, 214 Mo. 343; State v. Sassaman, 214 Mo. 738; State v. Shelton, 223 Mo. 141; State v. Hooley, 233 Mo. 295.

FARIS, P. J.—Defendant, tried in the circuit court of Clark county upon an information charging him with grand larceny, for that he had stolen certain domestic fowls, viz., four goslings, was found guilty and his punishment assessed at imprisonment in the penitentiary for a term of three years. From this conviction, after the usual motions for a new trial and in arrest, he has appealed.

The facts disclosed by the evidence are substantially as follows:

Both defendant and one Mrs. Samuel Denny resided upon farms in Clark county, distant some several miles from each other. Mrs. Denny was the owner of six goslings of the White Emden breed, and which were some eight weeks old. These goslings, at the time the four in question are alleged to have been stolen, were kept by Mrs. Denny in a goods box which she had converted into a coop. On the night of June 16, 1912, four of these goslings disappeared from this coop, into which they had been driven about 7:30 o'clock on the evening of the preceding night. The coop was found open and the two remaining goslings had escaped therefrom; mud was found upon the woven wire fence near the coop, and the tracks of a man were found along the ditch at the side of the roadway near this point.

Certain parties, apparently active and zealous members of a voluntary association known as the

"Anti-Horse Thief Association," watched the premises of defendant from some little distance with a field glass. These spying persons testified that they saw the goslings in the yard of defendant and saw him assist his wife in feeding and caring for them and in driving them to roost in the evenings. From information thus obtained and from the fact that the defendant seems to have been suspected of this theft from the beginning, a search warrant was procured some five days after the alleged theft, and the sheriff, being armed therewith and accompanied by Mrs. Denny, Mr. Denny and divers others of the vicinage, forming altogether quite a large aggregation, went to the premises of defendant and there found some sixteen goslings, among which were the four which are alleged to have been stolen from Mrs. Denny. These four goslings, from their general appearance, from the color of their legs and bills, which was said by the expert witnesses to be peculiar to this breed of geese, and from their gentleness and from the further fact that they came to her upon a peculiar call, Mrs. Denny positively identified as hers. She says that upon her claiming them defendant made denial of her ownership of them and claimed that his wife owned them. Upon Mrs. Denny's contending that they were hers, he told her to "take them if they were hers," but that he "would show her whose property they were." The sheriff says that he told defendant he would have to take them as sheriff and that he was then told by defendant that he (the sheriff) could take them; that he (defendant) "would not go to law about it."

Upon getting possession of the four goslings in question Mrs. Denny took them with her and turned them loose with the two others which she had. She testified that they seemed to know one another; that they "chattered together" and apparently knew the premises. In short, there was positive identification of these goslings by Mrs. Denny.

Other testimony in the case showed the presence of defendant and his wife in a buggy driving in the direction of the Denny farm and about two miles distant therefrom late in the evening preceding the night in which the goslings were evidently taken.

The defense is one of identity, that is, that the goslings alleged to have been stolen were, on the contrary, hatched and raised by defendant's wife. Many witnesses were called to develop and to combat this theory of defendant, and a sharp issue was raised creating much doubt as to where upon this question the truth lies.

Both defendant and his wife testified in his behalf. There was much proof as to the bad reputation of defendant for truth and veracity, and of the wife of defendant for truth and veracity and for chastity.

Defendant filed a motion which he calls, and which calls itself, a motion to quash the information, upon the ground that defendant had been tried theretofore and acquitted upon the identical charge in the instant case. It is difficult to ascertain the facts bearing upon this alleged acquittal. These facts rest for the most part upon oral testimony and not upon the record. No objection, however, was made by the State to the competency of this evidence. As nearly as we can ascertain from the unfortunate condition of the record, the prosecuting attorney seems at first to have filed an information in two counts against defendant. In one count of this information he was charged with having stolen certain turkeys which belonged to one Weber, and in the other count thereof with having stolen the identical goslings belonging to Mrs. Denny, for which he is being here prosecuted. After filing the said information in two counts, which was of course duplicitous, but before any plea was had thereon or before the defendant was ever tried thereon two separate informations were filed against defendant, in one of which he was charged with the larceny of the

turkeys of said Weber and in the other of which he was charged with the larceny of the goslings of Mrs. Denny. Defendant seems to have been tried upon the said separate information charging him with the larceny of the Weber turkeys and acquitted thereon; but he was never tried upon the information having two counts, nor was he ever tried upon the separate information charging him with the theft of Mrs. Denny's goslings until the trial in the instant case, in which same case and trial he now makes the contention of *autrefois acquit*. Upon a full hearing, and after admitting all of the testimony of whatever kind offered by defendant, the court overruled defendant's motion to quash, and defendant excepted.

Upon the trial the court gave seven instructions for the State and fourteen for the defendant, making twenty-one in all. Defendant offered two additional instructions, which the court refused. Since defendant strenuously contends that these refused instructions were correct and that their refusal constitutes error, we set them out below. They are as follows:

"A. The court instructs the jury that when a search warrant is executed, if the property is found, the sheriff may or may not arrest the defendant; and if the property is taken and the defendant is arrested for the larceny, either at the time or after the property is taken, the State may have the sheriff retain the property until after the final trial of the defendant, under the said charge of larceny, in order that the State may use same as evidence.

"B. The court instructs the jury that when Mrs. Baker testified in chief that she was in Kansas City, the State had a right to cross-examine her as to why she went there and what she was doing there."

Such other facts as may become necessary in order to make clear the points we find it necessary to discuss, will be set out in the opinion.

## OPINION.

An even dozen alleged errors are urged upon us by defendant's learned counsel. These we condense into five, so that we may not too seriously offend or add further cause for the expressed antagonism of the bar against long opinions (in all cases except those in which they are of counsel).

I. It is first contended that the court erred in overruling defendant's motion to quash the information. The grounds of this motion upon which quashal was sought and which we briefly restate, were that defendant had been at one time charged in the second count of a certain information with stealing the identical goslings of Mrs. Denny, which information also charged him (in the first count thereof) with stealing certain turkeys of one Weber; that the State elected to prosecute him upon the count charging the larceny of said turkeys, and that upon trial therefor he was acquitted. This allegation is not precisely in consonance with the facts as we have already shown them in the statement.

*Former Acquittal.*

*Imprimis,* we may say that a motion to quash, as was the nature of the attack here, was not a proper plea. A motion to quash is directed ordinarily to matters of form, and a demurrer to matters of insufficiency of substance, or allegation appearing upon the face of the indictment or information; to such as require for their proof or illumination evidence *aliunde* pleas in bar, or in abatement, or special pleas in bar are used. There are exceptions, we concede to these general rules (State v. Glasscock, 232 Mo. 278; State v. Faulkner, 185 Mo. 673); as for example, a motion to quash has been used to bring up the question of whether an indictment was found without the taking of testimony as a basis for it by the grand jury which preferred it. [State v. Cole, 145 Mo. 672.] Though this after all attacked the indictment for lack of statutory formality, which appeared, however, *dehors* the

indictment itself. But be this as may be, no case has been found which allowed a plea of *autrefois acquit* to be raised by an ordinary motion to quash.

Here defendant ought to have interposed a special plea in bar instead of moving to quash. He complains that the State erred in failing to file a replication to his said motion. No such plea to a motion to quash is required by the State. To a special plea of *autrefois convict* or *autrefois acquit* it is the practice for the State to file a replication putting the plea to an issue, but this is not absolutely a prerequisite, since going to trial on the plea waives the necessity of a replication. [Com. v. McCauley, 105 Mass. 69; State v. Howe, 27 Ore. 138; 12 Cyc. 368; Kelley's Crim Law & Prac. 236.] Besides, in the instant case defendant specifically moved to quash, and surely he may not convict the State of error for that it did not formally plead to a motion to quash. We do not think a case can be found anywhere holding that the plea of *autrefois acquit* can be raised by a motion to quash, and for this reason, if for no other, the learned trial court was right in overruling the motion. Those desiring to examine some of the applicable functions of a motion to quash may look at the cases of State v. Miller, 188 Mo. 370; State v. Nicholas, 124 Mo. App. 330; State v. Hall, 130 Mo. App. 170; State v. Brooks, 94 Mo. 121; State v. Henderson, 186 Mo. 473; State v. Duvenick, 237 Mo. 185; State v. Montgomery, 181 Mo. 19; State v. Green, 229 Mo. 642; State v. Firey, 223 Mo. 194; State v. Glasscock, supra; State v. Craig, 223 Mo. 201; and State v. Crane, 202 Mo. 54.

Concerning the functions of a motion to quash as distinguished from those of a plea in abatement, it was said in the case of State v. Firey, supra, at page 200:

"For the reasons assigned in that case the appeal of the State must be dismissed, unless the contention of the State in this case, that the plea was not in fact and in law a plea in abatement, is sound. Pleas in

abatement are founded on some defect apparent on the face of the accusation or on some matter outside the record proceeding to the insufficiency of the accusation.

" 'The rule is that all matters extraneous to the record must be taken advantage of by this plea; while such matters as appear by the accusation—errors apparent—are usually brought to notice by motion to quash, or demurrer, or left for motion in arrest in the event of conviction.' [Bassett's Crim. Pl., sec. 178; 1 Chitty's Crim. Law, sec. 445; 1 Bishop's New Crim. Proc., sec. 738; 12 Cyc. 718; Sampson v. State, 124 Ga. 1. c. 779; State v. Salmon, 216 Mo. 1. c. 503; State v. Sullivan, 110 Mo. App. 1. c. 80; State v. Bordeaux, 93 N. C. 1. c. 563.]

"That the plea alleged facts *dehors* the record for which the indictment should be quashed in the estimation of the defendant, is apparent, and the matters alleged were properly brought to the attention of the court in a plea in abatement. [Wharton's Crim. Pl. and Prac.; sec. 350, 3b.]"

It follows that the contention of defendant based upon his theory of a former acquittal, must be disallowed. This conclusion upon a technicality we reach the more readily, since, in our view, even upon the facts the point is not well taken.

II. The second point made by defendant has to do with the sufficiency of the evidence and aptly includes his twelfth point also. This alleged twelfth

Larceny: Identity of Goslings.

error urges that the verdict was begotten of passion and prejudice. So we consider these assignments together; pretermitting any other evidence or indication of passion and prejudice, except the inference which would naturally follow the lack of sufficient evidence, if this charge should be found well taken. In passing, we observe that no passion or prejudice is inferable from the severity of the

sentence, for it lacks two years of being the maximum fixed by statute as punishment for this offense. [Sec. 4537, R. S. 1909.]

Coming for a determination of this contention to a brief resume of the facts proven, we find that Mrs. Samuel Denny was the owner of certain youthful geese, called in the record by the diminutive "goslings;" that these birds were shut up in a coop as late as 7:30 o'clock of a certain rare June day near the summer solstice; near this hour the defendant and his wife were seen driving in the direction of the Denny messuage in a buggy and were, when observed, some two miles distant therefrom; at about 10:30 o'clock of that identical night the voices of these infant geese were raised in outcry; when morning came the coop was found open and four of these birds were missing; a muddy footprint was observed upon the fence near the coop. Thereafter, in a day or two young geese of the Emden variety, such as were the four missing ones, were seen upon the premises of defendant, and he was observed assisting his wife in feeding and caring for the flock in which these four geese were and in driving them to roost. Less than a week later the four geese were found upon defendant's premises, positively identified by the owner and taken away. It is true a plausible and mayhap truthful explanation of the alleged possession (of which possession, in connection with another point, we shall later have more to say) is a denial of it made by the defendant, but the matter of identity and the question of whether the goslings found at defendant's home were those of Mrs. Samuel Denny, as she testified, or those raised by defendant's wife, as defendant and his wife testified, was for the jury alone. No other necessary matter of proof is called in question. While upon the points sharply contested there was much contradiction, there was likewise ample testimony, the credibility of which, and the right of deciding the truth of which, was for the jury solely.

Upon such a state of facts the jury found against defendant; therefore, so do we.

III.  Much stress is laid by defendant upon the alleged misconduct of special counsel for the prosecution, from the superabundance of which and the overzeal of whom, the record seriously suffers.  This is always the case when special hired counsel for the State assist the prosecuting attorney in a State case.  The overzeal of dollars always outruns the zeal of duty and the record resulting, as a rule, bristles with error.  This record is no exception. It is filled with things which utterly disregard the rights of defendant, and which were clearly begotten of a desire of hired counsel to richly earn their fees. But these erroneous matters were not objected to, or excepted to, and thus saved for our review.  This condition applies as well to the offering of testimony, much of which was utterly inadmissible, as it does to the language of hired counsel, which was reprehensible in the extreme.  But to this language of counsel for the State no objection was made by defendant, nor did the learned trial court rule, nor was he asked to rule, nor was any objection or exception made or saved to his lack of action in failing to rule.  In this state of the case we ought not to convict the trial court of error.  Defendant simply "excepted" to the remarks of counsel.  He did not ask the trial judge either to rebuke or further rebuke counsel or fine them or put them in jail; some one of which the trial judge might have done, if he had been asked.  It is sufficient, ordinarily, to except simply to the erroneous things which the trial court himself does; but it is ordinarily necessary first to object to the erroneous things which the opposing side does and then except when the court refuses to afford relief upon the objection made.  [Branson v. Commonwealth, 92 Ky. 330.]  Under this state

*Misconduct.*

of the record we need not pass upon the question of whether the language used by counsel for the State constituted reversible error. For whether it did, or did not, it was not saved for our review. [State v. Rasco, 239 Mo. 535; State v. Miles, 199 Mo. 530; State v. Phillips, 233 Mo. l. c. 307; State v. Souva, 234 Mo. l. c. 571.]

IV. Complaint is made of instruction one given for the State, but no specification of error touching same is urged upon us, except that it is said there is no evidence in the record to base it on. This objection goes to the sufficiency alone of the evidence in the case, a point which we have already discussed and ruled against the defendant; so we need not here burden these views with it. While instruction one mentioned above does not contain the word "feloniously," nor does it by any circumlocution define this term, yet neither does the statute which makes the stealing of domestic fowls a felony, use the word "feloniously." This case therefore is clearly distinguishable from the case of State v. Rader, 262 Mo. 117, wherein out of deference to the definition of the ordinary crime of grand larceny as the Legislature had ordained it, the writer said that an instruction under the provisions of section 4535 ought either to contain the word "feloniously," or define it with reference to the intent of the taking.

Complaint upon the sole ground that there was no proof to sustain it is likewise made of instruction two given for the State, which in substance tells the jury that if they find that defendant was assisted by his wife, or that the larceny was committed by the wife of defendant and the latter was present thereat, aiding, abetting or assisting, he was in such event guilty. There was about as much evidence connecting the wife of defendant with this larceny as there was connecting defendant with it. No other objection is lodged with

us against the instruction, and we find it sufficient other-wise. What we have already said as to the sufficiency of the evidence on the whole case applies to one phase of this point. We do not think there was any error in giving this instruction.

Serious complaint is made to the action of the court in giving instruction four on the part of the State. This instruction reads thus:

"If the jury find from the evidence beyond a rea-sonable doubt that the goslings of Kate Denny; de-scribed in instruction number 1, were stolen, taken and carried away from the premises upon which the dwell-ing house of said Kate Denny and her husband, Samuel Denny, was situated in Clark county, Missouri, on or about the 16th day of June, 1912, in the nighttime, and that on or about June 21st, thereafter, said goslings were found in the exclusive possession of defendant or of defendant and his wife on defendant's premises, then and in that event, the person or persons in whose possession said goslings were so found, are presumed to have stolen them and the burden is on the defend-ant to rebut or overcome such presumption to your satisfaction but not beyond a reasonable doubt. And unless such presumption is overcome to your reason-able satisfaction by evidence explaining such posses-sion in a manner consistent with defendant's inno-cence, you should find the defendant guilty."

The defendant insists that the possession which will support this presumption of guilt, in addition to other requisites not here in question, must be an exclu-sive possession, and that it was error to permit the jury to presume guilt from a joint possession of de-fendant and his wife, as said instruction four allowed the jury to do.

We do not agree with this contention of learned counsel. This identical question was up in the case of State v. Phelps, 91 Mo. 478, upon a state of facts not

quite so strong as the instant case presents. It was there well ruled against the position of counsel and upon principle we do not feel inclined to take a different view.

V.   Defendant's proffered instruction "A" was erroneous because it is in consonance with neither the law nor the facts in proof.  This instruction in fair substance told the jury that when a search warrant is served by a sheriff the State has the right to have the sheriff retain for use as evidence in the case the property found and which is alleged to have been stolen. The goslings were taken under a search warrant.  The duty of the sheriff was to hold them "subject to the order of the court or officer authorized to direct the disposition thereof."   [Sec. 5325, R. S. 1909.]   The goslings were not offered in evidence in the case.  It is a little difficult to conceive of their competency as evidence; but be this as may be, they were not so used in this case.  The instruction was properly refused therefore, since the taking of property by an officer under a search warrant is not solely or even necessarily for the purpose of using such property as evidence in any subsequent prosecution.  Such use we conceive would be rare and always adventitious.  In fact, there may never be a prosecution.  The chief object is to recapture the property, so that the real owner of it may not be deprived of it.  To this end provisions are made in the statute for the care of the property and for its delivery to the actual owner upon satisfactory proof of ownership.  [Sec. 5326 et seq., R. S. 1909.]   Neither was the subject-matter of this instruction of such legal sort as to fall into the category of instructions which the court is compelled to give of his own motion.  [State v. Weinberg, 245 Mo. l. c. 575; State v. Douglas, 258 Mo. 281.]

Instruction "B" offered by defendant was properly refused by the court.  It was clearly a bald com-

ment upon an immaterial and irrelevant matter.   If
zealous counsel for the prosecution were discussing
matters outside the record, an oral objection promptly
lodged by defendant would have saved the point. There
is no rule of law which requires, or even permits, the
issues in a case to be muddied or befogged by a sep-
arate instruction as to every bit of evidence which
might have been offered, but which in this case was
not offered, and which would, or should, have been re-
jected for irrelevance, if it had been offered.   Espe-
cially does such a view seem wholesome in a case
where as here, the jury was already wrestling with
twenty-one instructions.

We have gone with much care and pains over this
record with a view to reverse and remand it, if any
sufficient legal excuse to that end could be found, since
upon the whole case defendant did not have a fair trial.
But we have been utterly unable to find such legal ex-
cuse; for those things which would have been error if
properly preserved, cannot be considered and reviewed
by us, because they were not correctly saved.   So find-
ing no error which we can review under the law, we
are constrained to order it affirmed, which accordingly
we do.

*Brown* and *Walker, JJ.,* concur.