## THE STATE v. SAM BOGUSLAW, Appellant.

Division Two, February 18, 1922.

1. **LARCENY: Theft of Automobile: Sufficient Evidence.** Testimony by the owner of an automobile that he left it in his garage; that the garage was locked; that the next day he discovered that the car had been taken out without his consent, and that afterwards it was found in possession of persons who had no right to it, is sufficient to establish the corpus delicti; and further testimony that two or three days later defendant was found in exclusive possession of the stolen car raised the presumption that he was the thief, and made out a prima-facie case for the State, and placed upon defendant the burden of reasonably explaining his possession and if the jury refused to believe his explanation and the testimony of his witnesses, especially where his explanation is inconsistent in material matters and much of it seems faked, it cannot be held that the evidence was insufficient to support a verdict of guilty.

2. ———: **Instruction: Presumption Arising from Possession.** The instruction in this case concerning the presumption of guilt arising from the possession by defendant of an automobile recently stolen is in form substantially the same as instructions on the subject repeatedly approved.

Appeal from Boone Circuit Court.—*Hon David H. Harris,* Judge.

AFFIRMED.

*Harris & Price* for appellant.

(1) The court erred in giving instruction number two on the part of the State. State v. Kelly, 9 Mo. App. 514; State v. Wingo, 66 Mo. 181; State v. Bruin, 34 Mo. 514; State v. Castor, 93 Mo. 250; State v. Drew, 179 Mo. 324; State v. Scott, 109 Mo. 226; State v. Ebbeller, 222

S. W. 396; State v. Henderson, 231 S. W. 596; State v. Blocker, 231 S. W. 1062; Wharton on Crim. Ev. sec. 758; 3 Greenleaf on Evidence, sec. 32. (2) The court erred in refusing to sustain the demurrer offered by defendant at the close of all the evidence. There was no substantial evidence upon which to base the verdict of the jury. State v. Kelsay, 228 S. W. 754; State v. Nave, 222 S. W. 744; State v. Adkins, 222 S. W. 432; State v. Hollis, 225 S. W. 952; State v. Anderson, 225 S. W. 896; State v. Welton, 225 S. W. 965; State v. Ruckman, 253 Mo. 488; State v. Francis, 199 Mo. 693; State v. Jaeger, 66 Mo. 179; State v. Packwood, 26 Mo. 363. (3) The verdict of the jury is unsupported by the evidence and is· manifestly the result of prejudice, passion and partiality. R. S. 1919, sec. 4078; State v. O'Kelly and Fitch, 258 Mo. 351; State v. Webb, 254 Mo. 414; State v. Prendible, 165 Mo. 353; State v. Primm, 98 Mo. 368; State v. Castor, 93 Mo. 243; State v. Jaeger, 66 Mo. 173; State v. Burgorf, 53 Mo. 65; State v. Marshall, 47 Mo. 378; State v. Daubert, 42 Mo. 238; State v. Mansfield, 41 Mo. 70; State v. Brosius, 39 Mo. 534; State v. Packwood, 26 Mo. 340.

*Jesse W. Barrett,* Attorney-General, and *Robert J. Smith,* Assistant Attorney-General, for respondent.

(1) The court did not err in giving instruction number 2 on the part of the State. This instruction is a proper declaration of the law and follows the instructions approved by this court. State v. Good, 132 Mo. 125; State v. Levy, 262 Mo. 191; State v. James, 194 Mo. 277; State v. Moore, 101 Mo. 324, 330; State v. Burns, 263 Mo. 599; State v. Prunty, 276 Mo. 374; State v. Baker, 264 Mo. 355. (2) The court properly refused to sustain the demurrer at the close of all the evidence. The record discloses that there is substantial evidence upon which to submit the case to the jury. State v. Fields, 234 Mo. 626; State v. James, 216 Mo. 407; State v. Wooley, 215 Mo. 687; State v. King, 214 Mo. 390; State v. Stewart, 127 Mo. 293;

State v. Concelia, 250 Mo. 420; State v. Taylor, 261 Mo. 228. (3) The verdict of the jury is supported by the evidence. State v. Rumfelt, 228 Mo. 443; State v. Taylor, 261 Mo. 228; State v. Concelia, 250 Mo. 424; State v. Rowe, 180 S. W. 884; State v. Shout, 263 Mo. 360.

WHITE, C.—The appeal is from a judgment upon a conviction of grand larceny. The defendant was charged with stealing the automobile of one J. B. Hopper, of Columbia, Missouri, on the tenth day of December, 1920.

Hopper testified that he lived in Columbia and was the owner of a Hudson Super-Six speedster, valued at twenty-five hundred dollars; that he put it in his garage about four o'clock in the afternoon of December tenth, 1920, and locked the garage with a cheap lock, which cost about thirty-five cents. He and his wife went away for the evening, returning home about nine o'clock. The next afternoon, December 11, about 5:30 or six o'clock Hopper's wife went to the garage to get a laprobe which had been left in the car, and the automobile was gone, the garage being still locked. Four or five days later the car was returned to him by the sheriff and Mr. Rowland. The license numbers still were on the car, and apparently no attempt had been made to alter or remove any marks of identification.

Edward J. Lally, a detective sergeant in the City of Saint Louis, testified that he arrested the defendant December 13, 1920, about 9:40 at night, while in possession of Hopper's car. The officer was attempting to trace another car by a number similar in some of the figures to the car in question. The car was standing at Fourteenth and Lyndon streets; Boguslaw came out and started to get in the car, when the officer asked him his name; he said it was Marks. Lally asked him where he got the car and defendant said he bought it; he was asked if the license was in his name and he said it was. He was arrested and locked up, and it was found that the license number was issued to Mr. Hopper of Columbia. After the officers communicated with Hopper the defendant was

brought in and told the car was stolen at Columbia, Missouri. Boguslaw then explained that he had answered an advertisement of a car for sale, and he met a man at Grand and Olive and paid him fifteen hundred dollars for the car. Lally asked him to show the bill of sale. Boguslaw said he didn't have it. He said a lady notary public at the Maryland Hotel took the acknowledgment, and he paid fifteen hundred dollars for the car in her presence; said he would produce the bill of sale at the proper time. The defendant further said he had bought the car about a week prior to his arrest, which was December 13th. The evidence showed that the Maryland Hotel was from a mile and a half to two miles and a half from Grand and Olive where the defendant said he met a man from whom he bought the car. He was also asked by the officer where he got the money to pay for the car. He said he won it shooting craps. It was a cash purchase.

Officer William B. Ryan, a detective sergeant, who was in company with Lally when defendant was arrested, related the same circumstances about the arrest and the fact that the defendant said the car license was in his name and his name was Marks. The officer knew him and told him his name was Boguslaw, a gangster, and running around with highway robbers and thieves. The next day in a conversation the defendant said he bought car; that he answered an ad. a week previous to his arrest, met a man at Grand and Olive and paid him fifteen hundred dollars in cash for the car. The defendant said he had a bill of sale but never produced it. Upon investigation by the officer it was found there was only one notary public at the Maryland Hotel, a Miss Rilla E. Bowles. Afterwards, the Sheriff of Boone County came from Columbia, sufficiently identified the car as Mr. Hopper's car and took it away.

The sheriff, Mr. Whiteside, and Mr. Rowland drove the car back to Columbia, taking the defendant along. The defendant showed considerable familiarity with the road on the way to Columbia, as if he had traveled it

recently and was acquainted with a certain temporary detour on the way.

Defendant did not take the stand in his own behalf, but he introduced one G. H. Chautin who testified that he had known the defendant since childhood; that on or about December 11, 1920, he got into conversation with the defendant in the lobby of the American Hotel and went to lunch with him. While they were at lunch the defendant was paged, but witness continued to eat his lunch. Finally he went up stairs and found the defendant talking to a party whom he introduced by the name of Hopper. Something was said about buying a car from Hopper, and witness was asked if he wanted to take a little ride while Hopper demonstrated the car. They drove around the city, stopped in front of a house on Olive Street while Boguslaw got out and rang the door bell. A gentleman came down stairs and was introduced by defendant as a Mr. Stacey. Stacey looked the car over, and the three, Stacey, Hopper and Boguslaw, talked together while witness sat in the car. They then went to an automobile concern and Boguslaw went inside, he said, for the purpose of finding out in whose name the license was issued. They drove to the Maryland Hotel where Stacey, Hopper and Boguslaw got out of the car and went inside; presently they returned and then went to Judge Gozalla's office where they drew a bill of sale and asked Chautin to witness it. The bill of sale then was signed, and Boguslaw paid fifteen hundred dollars in one-hundred-dollar and fifty-dollar bills to Mr. Hopper. They then got in the car and took Mr. Hopper to the Maryland Hotel, left him and continued to drive around town.

J. Waters Stacey was offered as a witness by the defendant. He testified that the defendant appeared at his place with a car and said a fellow wanted to sell it to him for eighteen hundred dollars. Stacey being familiar with cars looked it over and advised the defendant not to pay eighteen hundred dollars for it, that it was worth only fifteen hundred, and the bargain finally was struck

between Boguslaw and Hopper for the sale at fifteen hundred. They then went to Judge Gozalla's office, a bill of sale was made out, defendant signed it, and Stacey and Chautin signed it as witnesses.

A bill of sale was introduced dated December 11, 1920. It was in regular form, transferring from John B. Hopper to Sam Boguslaw one dark blue Hudson Sport model, Model "O" 1920, motor number 3027, license number 207,971. The seller certified that he was the owner and had the right to sell same, and that it was free from any encumbrance. The instrument was witnessed by J. W. Stacey, 4244 Olive Street, and J. Chautin, 1109 O'Fallon Street. It was acknowledged December 11, before Andrew Gazotto, Jr., notary public. The acknowledgment, in the usual form, recited that John B. Hopper of Columbia, Missouri, was known to the notary as the person described in, and who executed, the instrument.

The defendant also introduced an advertisement published in the Globe-Democrat of December 4, as follows: "Hudson Speedster, late model, good condition, cash only; leaving city. Ad. B. 99, Globe-Democrat."

This was the advertisement which the defendant claimed attracted his attention. It was shown by the State that the Globe-Democrat contained many advertisement for the sale of automobiles, some similar to the one mentioned. No subpoena was issued for Andrew Gazotto, Jr. There was some evidence to the effect that a person of that name had been justice of the peace in Saint Louis, but was not such at the time of the alleged execution of the bill of sale.

Mr. Hopper had been trying to sell his automobile and had advertised it for sale some time before it was stolen. He testified that he still was trying to sell it at the time of the trial. He made prompt report of the theft to the insurance agency after his car disappeared. These circumstances are made much of by the appellant. Hopper, in rebuttal, testified that he never signed the bill of sale introduced in evidence by the defendant.

On this evidence the jury found the defendant guilty as stated and assessed his punishment at five years' imprisonment in the penitentiary.

I. The first point urged for the reversal of the case is that the evidence is insufficient to sustain a verdict of guilty. Hopper left his car in the garage and the garage locked; he discovered the car had been taken without his consent and afterwards was found in the possession of persons who had no right to it. The circumstances of the disappearance of the car showed all the elements of larceny, and thus the *corpus delicti* was established.

Two or three days later the defendant was found in exclusive possession of the car, thus raising the presumption that he was the thief. That made out a prima-facie case for the State, and it was for the defendant then to offer an explanation of his possession which would reasonably explain how he came by it.

At the trial his explanation was quite different from his statements at the time he was arrested. Several statements at that time were shown contrary to the fact. He said his name was Marks, that the car was his own and the license number issued in his name; that he had a bill of sale which was acknowledged before a lady notary public at the Maryland Hotel. It transpired that his name was not Marks; that the license was not in his name, but was issued to Hopper; that no bill of sale was acknowledged at the Maryland Hotel before a lady notary public. It was possible for the defendant, with proper confederates, between the time of his arrest and the trial, to frame a bill of sale. There are other circumstances surrounding the transaction which might well tax the credulity of the jury. The advertisement which appeared in the Globe-Democrat of December 4th was not shown to have any connection whatever with the defendant's alleged purchase from the man who signed the bill of sale. The payment of fifteen hundred dollars in cash out of the defendant's pocket was an unusual transaction. Defendant explained that he had earned this money playing

craps. This court has no official information as to what stakes are usual in the game of craps, but fifty-and one-hundred-dollar bills look somewhat large for any kind of a game. The prisoner did not appear to be joking at the time, for his situation, with his liberty at stake, was quite serious.

The jury by their verdict showed that they didn't believe defendant's explanation of his possession, and they were warranted in finding that it did not explain.

II. The appellant assigns error to the giving of instruction number two on behalf of the State on the possession of property recently stolen. The instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence in this case beyond a reasonable doubt, that the automobile mentioned in the information Instruction. was stolen from the witness Hopper as alleged in the information, and that soon thereafter said automobile was found in the exclusive possession of the defendant, then and in that event the defendant is presumed to be the thief and the burden is on him to rebut or overcome such presumption to your satisfaction, but not beyond a reasonable doubt. In determining whether the time was recent after the theft of the automobile, should you find there was a theft, you will have regard to the nature, character and situation of the article stolen; and unless such presumption is overcome to your satisfaction by evidence in the case explaining such possession and in a manner consistent with defendant's innocence, or by the combined weight of all the evidence in the case, you should find the defendant guilty."

This instruction is in form substantially the same as instructions on that subject which repeatedly have been approved by this court as sufficient. [State v. James, 194 Mo. l. c. 277; State v. Baker, 264 Mo. l. c. 355; State v. Good, 132 Mo. l. c. 125; State v. Levy, 262 Mo. l. c. 191-2.]

292 Mo.—15

The judgment is affirmed. *Railey* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.