STATE of Missouri, Respondent,

v.

Leo Robert WEBB, Jr., Appellant.

No. 53658.

Supreme Court of Missouri, Division No. 2.

Oct. 14, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Cyril J. Clancy, Asst. Atty. Gen., Clayton, for respondent.

Lewis E. Pierce, Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

PRITCHARD, Commissioner.

Appellant was charged and convicted by a jury of the felony of stealing 38 Hampshire and Yorkshire breeds of hogs of a value (as the evidence shows) of $1,227.40. Upon a finding that appellant was a second offender, the court sentenced him to five years imprisonment in the Department of Corrections.

Assigned as error are these points: (1) The court erred in allowing the state to amend the information to allege immediately prior to trial the second offender act, and to endorse as a witness one James Parretta; (2) the court erred in allowing, over objection, the alleged victims to testify that the hogs found in appellant's possession were delivered to them by the police, "thereby inferring to the jury that upon some facts not shown in evidence the police had determined that all of those alleged hogs were the same hogs as had been stolen, all being a denial of the appellant's right to be confronted by the witnesses against him"; and (3) the court erred in overruling the motion for judgment of acquittal because the evidence of guilt consisted only of the possession of stolen property, the possession not being exclusive and which was not unexplained, "and the circumstances shown in evidence were not irreconcilable with any reasonable theory of innocence."

The brothers Carl and Dominick Parretta conducted a partnership hog feeding operation in the east bottoms of Jackson County on about 15 acres. The area was

divided into three pens with connecting gates. On April 28, 1967, Carl's son, James, visited the pens and saw nothing amiss, but did not count the number of hogs. Dominick was at the lot the following morning and then noticed some strange dual wheel tire marks therein, a "big blob" of red paint on the loading chute, and indications on the ground that the chute had been moved slightly. Dominick, Carl, James and two small boys then counted the hogs (there. had been 342 head in the pens) and found that 38 were missing. They then went to the Sivils sale barn in Butler, Missouri, where Dominick gave a Highway Patrolman a description of their missing hogs, two of them in particular. Dominick identified a photograph taken at the Butler sale barn with him present as showing the same bunch of hogs which belonged to him and his brother. One hog in particular was a red one with a white band, and another "Hamp" hog had both ears burned "down to a nub" from an overdose of penicillin. A group of "Hamps" had notches in their ears which were there when the Parrettas bought them. Twenty-seven white Yorkshires were in the group. After they brought the hogs back to their hog lot the Parrettas fed them a little longer, and then sold them.

Carl Parretta was with Dominick at the sale barn when they described their missing hogs, and then he was shown the hogs and was able to identify them as theirs: the one red hog with a white band around him "which is kind of rare and it's the only one we had like that"; the other one had his ears burned from an overdose of penicillin; the ten Hampshire, black and white hogs, had notches in their ears; and twenty-seven white hogs. They hauled the hogs back to their lot, and finally had to sell them, they got so big.

State Highway Patrolman L. D. Beersman arrested appellant at the Jack Sivils sale barn at the north edge of Butler. Appellant was on the front drive, having pulled into it in a truck and circled to back up to the loading chute. The truck was a 1961 International with a red stake bed, and which showed ownership of the Valentine Rental in Kansas City by that name on both sides of the cab. Appellant was driving the truck which was loaded with 38 hogs. The time was 10.:32 o'clock in the evening of April 28. A Howard Walker was with appellant in the truck, and two other persons, the Kirk brothers, were parked in a black Chevrolet pickup north of the rental truck. Beersman had a conversation with appellant on the way to the county jail, before which he had advised appellant of his right to remain silent and that he had a right to counsel. Beersman had not previously advised him thus in a conversation at the sale barn. On the way to jail appellant told Beersman (the same story as previously) that the hogs belonged to the Kirk brothers who were in the accompanying pickup, that he was receiving $50 and expenses merely to haul the hogs in from Osceola, Missouri. On April 29, the Valentine Rental picked up its truck which was released to them. Beersman was present when the Parretta brothers described their hogs, after which they were permitted to view them.

Clifford D. Mathis is the assistant manager of Valentine Drive-It-Yourself Truck Rental in Kansas City. He saw appellant on April 28, 1967, in their office at around 3:30 o'clock in the afternoon. Two or three other persons were with appellant, one of whom rented a truck and the copy of the rental was signed by a Harold Ray Butcher, but Mathis did not see him do so. Walker Cooper, a sales agent for Valentine, testified that he did not rent the truck to appellant, but he saw him with another person who signed the rental agreement.

For appellant, Eva Mae Webb, his wife, testified that on April 28 the Kirk brothers (her kinfolk) visited their home. They asked her husband if he would haul some hogs for them. She did not know any of the particulars of what they were going to pay him.

Under Point I, appellant argues that the amendments were made at such a time (five minutes before the case was set for trial) that he was not afforded an opportunity to prepare to reply to the new charge (of the prior offense); and as to the endorsement of James Parretta, he had no opportunity to make discovery and an investigation of this newly proposed witness whose testimony was used to limit the time in which the theft occurred and to show appellant's alleged possession of the stolen hogs was more recent. As to the prior offense to make the second offender act applicable, the trial court has much discretion in allowing an amendment to allege the fact of a prior conviction. State v. Whitaker, Mo., 312 S.W.2d 34, 40 [14]. In the case of State v. Linder, Mo., 412 S.W.2d 412, after the commencement of the trial the state was allowed to change the allegation of a prior conviction in Jackson County to Polk County. Citing State v. Wilson, Mo., 349 S.W.2d 934, and State v. Ninemires, Mo., 306 S.W.2d 527, the court said (412 S.W.2d 413), "On more than one occasion it has been held that the state may amend an information and for the first time allege a prior felony conviction." In State v. Hill, Mo., 396 S.W.2d 563, it was held that the addition of an allegation of prior conviction did not charge any separate or different offense, but only authorized assessment of punishment by the court instead of a jury if defendant was found guilty of the principal charge and the prior conviction. Thus, appellant's relied-upon case of In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117, involving (as offending due process of law) the addition of new charges of misconduct against a lawyer during disbarment proceedings is inapplicable. More compelling against appellant's contention of surprise is his counsel's open court admission of knowledge of appellant's prior conviction, his firm having represented appellant in that case. Although there is not shown any excuse for the state's delay of some five months in amending the information (and endorsing as a witness James Parretta), on the other hand, appellant has shown no prejudice or surprise by the amendment and the endorsement of the witness' name. No request for continuance was made to meet the allegations or to further prepare for trial. In this situation, controlling is State v. Cross, Mo., 357 S.W.2d 125, 126 [4, 5], where there was no claim of surprise and no written application for continuance. See also State v. Thost, Mo., 328 S.W.2d 36, 38 [4]. Point I is overruled.

The evidence clearly shows that the hogs which were at the Butler sale barn were first described by the Parretta brothers, and then positively identified by them before they were turned over to them. The appellant objected to this evidence on the ground that it indicated to the jury that the police officers had made an administrative determination that the hogs were the same as those which were stolen from the Parrettas. That objection is here argued together with the proposition that this amounts to a denial of appellant's right to be confronted by the witnesses against him—that the claimed determination by the police of the ownership of the hogs was not shown in evidence. If the Parretta brothers had not testified as above set forth, and the officers had made an independent determination of their ownership, then appellant's argument would be sound. But, the facts show that no such determination was made. Appellant was confronted by the witnesses against him on the issue of the ownership of the hogs and the evidence thereon was sufficient to show that the Parrettas, and not appellant (or some other person), owned them. It could not be prejudicial to appellant that after identification the hogs were returned to their owners. Supreme Court Rule 33.04(a), V.A.M.R., prescribing the procedure for the return of stolen property, is inapplicable here because neither appellant nor any other person claimed to own the hogs. That rule is designed to apply when a controversy exists as to ownership, or at least when there is uncertainty as to who owns property in the custody of an officer.

There is no merit in appellant's contention that the facts as to the turning over of the property to the Parrettas permitted the prosecutor to argue his personal belief in appellant's guilt, based on a possession of facts not in evidence. Point II is overruled.

By his last point, appellant attacks the sufficiency of the evidence to support the verdict in these particulars: The evidence of guilt consisted only of the possession of the allegedly stolen property, which possession was not exclusive and was not unexplained, and the circumstances shown in evidence were not irreconcilable with any reasonable theory of innocence.

Appellant is incorrect in his statement that the Parretta brothers were able to identify only two of the 38 missing hogs. Dominick identified a photograph taken at the sale barn as showing the same bunch of hogs which belonged to him and his brother. The red hog with the white band and the hog with the burned ears were especially pointed out. Carl Parretta identified all of the 38 hogs as their missing ones as above pointed out. But even if these witnesses were unable to identify all of the hogs, the evidence is sufficient to show a part of them (even the two hogs with special characteristics) was stolen (supporting an inference that all of them were stolen), and amounted in value to more than $50. See the early case of State v. Davis, 73 Mo. 129, 133; and State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 454 [9, 10]. More seriously, appellant argues that he was not in exclusive possession of the hogs, and that the possession was not unexplained. It is true, as the evidence shows, one Howard Walker was with appellant in the truck at the sale barn, and the Kirk brothers were parked nearby. But it has long and often been held that the possession of recently stolen goods which will support an inference of guilt may be a joint possession of a defendant and another, and that such possession need not be separated from all possession by others. State v. Baker, 264 Mo. 339, 175 S.W. 64; State v. Oliver, 355 Mo. 173, 195 S.W.2d 484; State v. Jordan, Mo., 235 S.W.2d 379; State v. Webb, Mo., 382 S.W.2d 601.

Appellant's explanation as to how he came into possession of the hogs (that they belonged to the Kirk brothers and appellant was merely hauling them for $50 and expenses) as told by him to Patrolman Beersman, and as testified to by appellant's wife, was for the jury to believe or disbelieve. State v. Moore, 101 Mo. 316, 14 S.W. 182; State v. Boguslaw, 292 Mo. 218, 237 S.W. 114; State v. Nichols, Mo., 130 S.W.2d 485; State v. Kennedy, Mo., 396 S.W.2d 595. There was a sufficiency of evidence to support the conviction, and Point III is overruled.

The allegations of the amended information follow the statute; the verdict is responsive thereto; the sentence is within permissible limits; and allocution was granted before judgment, all in compliance with Supreme Court Rule 28.02, V.A.M.R.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

FINCH, P. J., DONNELLY, J., and GODFREY, Special Judge, concur.

EAGER, J., not sitting.