**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ronald Dean BARKER, Defendant-Appellant.**

No. 10678.

Missouri Court of Appeals, Springfield District, Division Two.

Oct. 2, 1978.

---

1. At trial the officer stated he had in fact read the *Miranda* warnings to defendant; that he had found the "rights waiver" read to and signed by defendant.

John D. Ashcroft, Atty. Gen., Daniel F. Lyman, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Richard D. Bender, Springfield, for defendant-appellant.

BILLINGS, Chief Judge.

Defendant Ronald Dean Barker was convicted of burglary and stealing and in this appeal questions the sufficiency of the evidence to support the convictions and avers the failure of the state to timely comply with discovery rules tainted his trial. We affirm.

The B. F. Goodrich tire store in Springfield, Missouri, was burglarized at night and 38 new tires stolen. The break-in and theft were discovered by employees the morning of January 21, 1977. Tracks from a vehicle equipped with four mud and snow tires were observed near the freight door of the tire warehouse.

Defendant and Donnie Vinyard went to Richard Trotter's house in Springfield about noon January 22. They wanted Trotter's help in disposing of tires they and Frostie Duncan had stolen from B. F. Goodrich. Trotter accompanied the two men to Lebanon and found a prospective buyer for some of the tires. When the trio returned to Springfield, Trotter contacted police officers who advised him to stall the moving of the tires. The next morning, January 23, defendant and Vinyard came by Trotter's house to discuss transporting the tires to Lebanon. Before meeting defendant and Vinyard at the latter's mother's house, Trotter notified police. The tires were in a garage and defendant, Vinyard and Trotter loaded 13 of them into a pickup truck which was equipped with four mud and snow tires. Officers stopped the truck as it was en route to Lebanon and arrested Vinyard, the driver, and Barker.[1]

---

1. Trotter, later in the day, met with officers and talked to them further. The next day Vinyard and Duncan were shot to death by Trotter when they came to his house. The transcript

■ The evidence was sufficient. Possession of recently stolen goods will support an inference of guilt and this may be a joint possession of a defendant and another. *State v. Webb,* 432 S.W.2d 218 (Mo.1968). Additionally, the conversations with Trotter provide independent evidence of defendant's participation in the crimes. If defendant made the statements that "they" had stolen the tires this would constitute an admission of criminal participation by the defendant. If we assume that Vinyard made the statements, then defendant by his silence under the circumstances adopted and assented to Vinyard's statement and this would constitute an implied admission against the defendant. *State v. Thomas,* 440 S.W.2d 467 (Mo.1969). Defendant and Vinyard were together when they went to Trotter's house on both occasions and both accompanied him to Lebanon to find a buyer for the purloined tires. Defendant's admissions, actual or implied, coupled with his participation in finding a buyer for the tires, loading the tires into the truck, and assisting in transporting the stolen merchandise, along with joint possession at time of arrest, demonstrates sufficient evidence to support the jury's verdicts.

■ Defendant's complaint that the trial court erred in permitting the state to endorse three witnesses the morning of the trial is without merit. True, defendant had filed a request for disclosure of witnesses to be used by the state at trial pursuant to Rule 25.32, V.A.M.R. And, under Rule 25.-37, V.A.M.R., the state had a continuing duty to disclose the names of witnesses it intended to call as witnesses. But this does not mean, as defendant suggests, that he was prejudiced by the court's permitting the late endorsement of the three witnesses.[2]

When defendant objected to the endorsement of the three witnesses, the trial judge leaned over backwards to accommodate the defendant. He granted the defendant's counsel time to talk to each of the witnesses and repeatedly offered defendant a continuance. The defendant rejected the offers of a continuance and objected to the *state's* request for a continuance for the purpose of providing defendant with ample time in which to interview the three witnesses.

■ Defendant has not been able to demonstrate any prejudice by the late endorsement of the witnesses. He made no request for continuance and in fact rejected offers of a continuance. He was granted ample time to interview the witnesses and did interview them. Moreover, Rule 24.17, V.A.M.R., specifically authorizes the endorsement of names of other witnesses *at any time* upon order of court. Consequently, the trial court is vested with broad discretion in permitting the endorsement of additional witnesses. *State v. Cobb,* 444 S.W.2d 408 (Mo. banc 1969). The trial judge exercised his discretion in the instant case and we find no abuse of that discretion. *State v. Webb,* supra at 221.

Defendant's final assignment is an attack on permitting Trotter to testify because of the state's failure to "timely and substantially comply" with the rules of discovery concerning Trotter's record of convictions.

■ First of all, defendant made no objections when Trotter was called as a witness. A point in a motion for new trial and appellate brief must be based on objections made and reasons assigned at trial and cannot be raised for the first time in the after trial motion or brief. *State v. Brookshire,* 353 S.W.2d 681 (Mo.1962), cert. denied, 371 U.S. 67, 83 S.Ct. 155, 9 L.Ed.2d 119 (1962).

indicates they knew Trotter had "snitched" on them. Defendant was in jail at the time. Trotter was not charged by state authorities for the killings but was prosecuted by federal officials for illegal purchase of a firearm.

2. One of the three was an employee of the tire store and his testimony was cumulative of testimony of two other employees concerning the

break-in and theft of the tires. The other two witnesses were two police officers. One saw the truck at Vinyard's mother's house shortly before it departed for Lebanon. The other officer went to the scene of the arrest and took photographs of the truck and contents and assisted in unloading the tires when the truck was returned to Springfield.

Secondly, a list of Trotter's convictions was given to defense counsel at the trial by the prosecution and on *direct* examination he was examined at length regarding his prior criminal convictions. The point is denied.

The judgment is affirmed.

HOGAN, J., and RAGLAND, CONLEY and YEAMAN, Special Judges, concur.